**Lily R. PHILLIPS, Plaintiff,**

v.

**Harold K. BRADFORD et al., Defendants.**

No. 73 Civ 2118.

United States District Court, S. D. New York.

April 10, 1974.

---

Bennett Frankel, P. C., New York City, for plaintiff.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Investors Diversified Services, Inc.

Carter, Ledyard & Milburn, New York City, for defendant Donald M. Kendall.

Davis, Polk & Wardwell, New York City, for defendants Investors Stock Fund, Inc. and Investors Variable Payment Fund, Inc.

Gasperini, Koch & Savage, New York City, for defendant Investors Mutual, Inc.

GURFEIN, District Judge:

This is a derivative action on behalf of the defendant Investors Mutual Fund, Inc. ("Mutual"),[1] by Lily R. Phillips who alleges in her amended complaint that she is the holder of its capital stock "the said shares having devolved upon her by operation of law upon the death of her mother, Else Berger, in May, 1973. The said Else Berger was a holder of the capital stock of [Mutual] at all times complained of herein, and the plaintiff has been a holder thereof from the death of Else Berger continuously to date."[2] Jurisdiction is based on the Investment Company Act of 1940, 15 U.S.C. § 80a–43 and under common law.

The defendants are (1) Investors Variable Payment Fund, Inc. ("Variable"); (2) Investors Stock Fund, Inc. ("Stock"); (3) Investors Diversified Services, Inc. ("IDS"); (4) Mutual; and (5) ten directors, all of whom, save one,[3] are alleged to have served on the Boards of Directors of Mutual, Variable, and Stock from at least April 3, 1967 to the date of the complaint.[4] IDS acted as the investment adviser to each of the three open end mutual funds which were registered as such with the Securities and Exchange Commission.

It is alleged that the respective contracts with IDS require it, among other things, to "make specific investment recommendations, subject to the direction and control of the Board of Directors, the Executive Committee and the officers of the Company [the respective mutual fund]."

The complaint alleges in the first count that upon the advice and recommendation of IDS the defendant directors caused *Variable* to purchase, between January 24, 1967 and April 25, 1967, a total of 200,000 shares of Penn Central stock for $11,692,701.46 or $58.4635 per share; that the same defendant directors also caused *Stock* to purchase, between June 8, 1967 and February 26, 1968 a total of 320,000 shares of Penn Central stock for $20,929,860.88 or $65.4058 per share; that the same defendant directors also caused *Mutual* to purchase, between October 31, 1967 and August 1, 1968, 500,000 shares of Penn Central stock for $36,143,198.88 or $74.2863 per share.

The complaint charges that, in causing Mutual to pay a higher price on the purchase of its Penn Central shares than the same defendant directors caused Variable and Stock to pay, the defendant directors breached their common law fiduciary duty to Mutual and its shareholders, and also their duty under the investment advisory agreement and the 1967 Mutual prospectus, under which IDS acted as distributor of Mutual's shares. It is further alleged that the failure to state that the defendants would execute their duties under the contract and prospectus so as to give priority to Variable and Stock over Mutual in the purchase of the same security was a material representation which was omitted from the prospectus and from a proxy statement in violation of the Investment Company Act of 1940 and the proxy rules.

The relief requested is that (1) the defendant directors, (2) the defendant IDS and (3) the defendants Variable and Stock pay to Mutual such sums of money as would result in Mutual paying the same average price per share for the Penn Central stock acquired by it in 1967 and 1968 "as would have been paid had all the purchases of said stock by said three mutual funds been averaged

---

1. The action was commenced in the state court and removed to this Court.

2. A motion to allow Lily R. Phillips to be substituted as plaintiff instead of her mother, the late Else Berger, was granted on consent.

3. Clifford H. Anderson is alleged to be a director only of Mutual. (Compl. ¶ 7)

4. Donald M. Kendall is alleged to have been elected on April 16, 1969.

as to price and allocated in amount so that each of said three mutual funds would be charged with the same purchase price per share."

The second count of the complaint deals with sales rather than purchases of Penn Central stock.

The second count alleges that upon the recommendation of IDS the defendant directors caused defendant *Variable* to sell, between April 10, 1969 and May 28, 1969, a total of 200,000 shares of Penn Central stock for $10,681,578.31, or $53.-4079 per share; that the defendant directors also caused *Stock* to sell, between March 27, 1969 and May 21, 1969, a total of 320,000 shares of Penn Central for $17,480,178.27 or $54.6256 per share; and that the defendant directors caused *Mutual* to sell 500,000 shares of Penn Central for $13,477,486.07 or $26.-9550 per share.

It is charged that the delay of the defendant directors and IDS in causing the sale of the 500,000 Penn Central shares by Mutual until after they had caused Variable and Stock to sell out 100% of their 520,000 shares at a price per share double that received by Mutual constituted a breach of trust, gross negligence and reckless disregard of their duties to Mutual and its shareholders.

It is also charged that in delaying the sale of Penn Central Shares by Mutual until the defendants had completed the sales at higher prices by Variable and Stock, they violated their fiduciary duty to obtain equality of treatment for Mutual of which they were also controlling directors.

The relief requested is that (1) the defendant directors, (2) the defendant IDS, and (3) the defendants Variable and Stock pay to Mutual such sums of money as would result in Mutual receiving the same average price per share for Penn Central stock it sold in 1969 and 1970 as would have been received by it

had all the sales of stock by the three mutual funds been averaged as to price and allocated in amount so that each of the three mutual funds would receive the same average price per share for said sales. The plaintiff also asks for an accounting.

With respect to both counts plaintiff alleges:

"19. Demand upon the Board of Directors of Investors Mutual Inc. to bring this action would be futile, since a majority of the members of said board are named as defendants herein.

"20. Demand upon the shareholders of Investors Mutual Inc. to bring this action would be futile since plaintiff has neither the funds nor resources to conduct a proxy contest, and control of the proxy machinery is vested in defendant I.D.S."

### The Motion

This is a motion by Mutual, the nominal defendant, on whose behalf the plaintiff sues, in which the defendants Variable and Stock join, for an order dismissing the amended complaint pursuant to Fed.R.Civ.P. 23.1, and on the ground that the substituted plaintiff lacks standing and capacity to maintain this derivative action on behalf of Mutual and its shareholders.

The grounds of attack are:

(1) the substituted plaintiff is neither the owner nor a person upon whom ownership of any shares of defendant Mutual have devolved by operation of law;

(2) a conflict of interest prevents plaintiff from adequately and fairly representing Mutual's shareholders in this action;

(3) the amended complaint fails to allege with particularity any adequate or sufficient reasons for failing to make due demand on the directors or shareholders of Mutual to obtain the relief requested.

## I

The defendants say they would not have consented to the substitution of Lily R. Phillips for her mother if they had not mistakenly thought that Lily R. Phillips was the sole heir of her mother. It now turns out that Mrs. Phillips' mother and father died the same day, that the mother's probated will left all to her husband, William Berger, who survived her, so that the plaintiff derives ownership of 63½% of the estate, including the shares in issue, through the father's will. The defendants contend that Mrs. Phillips, despite her allegation that she took by "operation of law" as required by Rule 23.1, did not take by "operation of law."

■ This seems to be a case where literalism loses sight of the purpose of the Rule. Rule 23.1 requires the plaintiff in a derivative shareholder's action to have been a shareholder at the time of the transaction he complains of to avoid speculation, champerty or collusion to confer jurisdiction. 3B Moore's Federal Practice ¶ 23.1.15 [2] at 23.1–58; see Hirschfield v. Briskin, 447 F.2d 694, 698 (7 Cir. 1971).

■■ The matter of death or a legal succession by operation of law had to be an exception, but I think only for the same purpose, to avoid the evils mentioned. We are not concerned with strict rules of title. I think it is enough as Judge Fairchild said in Hirschfield v. Briskin, *supra,* that "her acquisition sufficiently approximated a devolution by operation of law." Section 61 of the General Corporation Law of New York, McKinney's Consol.Laws, c. 23, tracks the language of present Federal Rule 23.1. It has been held in New York that a devolution by will is as much a devolution "by operation of law" as is a devolution by intestacy. Salter v. Columbia Concerts, Inc., 199 Misc. 479, 77 N.Y.S. 2d 703 (1948). Since I agree with the reasoning of Judge Hofstadter, I will consider the *Salter* decision as the law

of New York, though it is a decision of a trial court.

There is no reason of policy to terminate a derivative stockholder action because the plaintiff dies. Nor was that result intended to be reached by a technical approach to the meaning of "by operation of law" in Rule 23.1.

## II

■ The defendants contend that the plaintiff cannot "fairly and adequately represent the interests of the shareholders," for the reason that she has more shares in the two defendant funds than she has in Mutual, the fund on behalf of which she is suing. Since she is not involved in two inconsistent claims for relief, she is not as clearly disqualified as the plaintiff was in Quirke v. St. Louis-San Francisco Ry., 277 F.2d 705 (8 Cir. 1960), cert. den., 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1961), upon which defendants rely. Nevertheless, the point need not be decided, for the plaintiff states she is redeeming shares in the Investors Stock Fund and the Investors Variable Payment Fund. If she does that, there will be no conflict.

## III

The defendants contend that there is an inadequate allegation of reasons for not making due demand. Fed.R.Civ.P. 23.1 provides in part: "The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

The plaintiff here concedes that she has not made a demand but asserts that she is excused from that requirement because it would be a futile gesture.

In response to these claims of futility the defendants argue that with the exception of defendant Kendall, no director

of Mutual has been served and made a party to this action. Moreover, it is argued, the plaintiff's complaint fails to state "'with particularity' any facts which would excuse or demonstrate that such a demand would have been futile. . . ."

■ 3B Moore's, *supra,* at 23.1–254 suggests that "[t]here is no unanimity of opinion amongst the courts, and probably the most straightforward approach is to admit frankly that it lies within the sound discretion of the court to determine the necessity for a demand." "Sound discretion" cannot elide considerations of logic, policy or experience. Rule 23.1 is not simply a rule of pleading, some kind of anomaly to the generality of notice pleading. See Bartlett v. New York, N. H. & H. R. R., 221 Mass. 530, 538, 109 N.E. 452, 456 (1915). Rule 23.1 is a rule of policy, perhaps not of substantive quality, but surely more than is required by some assumed requirement of notice. In re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1 Cir. 1973), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). It is grounded on historical antecedents and by the time it was built into doctrine by the federal rules, it was of respectable vintage in the common law. See e. g. Bartlett, *supra;* Hawes v. Oakland, 104 U.S. 450, 460–461, 26 L.Ed. 827 (1881).

Although Professor Moore may be right in his refusal to acknowledge that there is a uniform gloss by judicial interpretation on this feature of Rule 23.1, the search must be made, nonetheless, to find whether there is a collective judicial wisdom that may be applied to the pleading at issue.

The moving parties contend that our case is the same as Baffino v. Bradford, 57 F.R.D. 79 (D.Minn.1972), and *In re Kauffman Mutual Fund Actions, supra.* These are decisions involving the very mutual funds which are here involved.

The plaintiff says little, but she urges that Judge Tyler's opinion in Papilsky v. Berndt, 59 F.R.D. 95, 96 (S.D.N.Y. 1973), is dispositive in her favor, and that *In re Kauffman, supra,* is distinguishable because in that case there was a disinterested majority of the Board that was not named as defendants, while here a majority of the directors is named as being liable for the transactions complained of.

*Baffino, supra,* although it, like the present action, involved IDS, Mutual, Variable and their directors was quite a different case. That was a derivative action on behalf of Mutual and Variable against IDS and IDS Securities Corporation ("IDSS") in which it was alleged that IDS charged excessive fees for advisory services, that the services were inadequate, and that the Funds' directors failed to seek competitively lower fees through arms' length negotiations. The allegation which was intended to conform to Rule 23.1 simply stated that "demand upon the Fund to bring this action would be futile because the Defendants [IDS and IDSS] *control* the Fund." 57 F.R.D. at 80. (Emphasis supplied).

Though there is an apparent conflict of authority on whether affidavits should be considered on a motion based on an alleged failure in a complaint to allege with particularity the reasons "for not making the effort" to obtain the action the plaintiff desires from the directors, see Judge Weinfeld in Dopp v. American Electronics Laboratories, Inc., 55 F.R.D. 151, 153 n. 3 (S.D.N.Y.1972), Chief Judge Devitt in *Baffino, supra,* relied on affidavits and dismissed the *complaint* on the ground that the allegation that defendants "controlled the Fund" was contrary to the affidavits filed by the defendants.

The funds here involved also have unaffiliated directors who are defendants. In *Baffino,* however, the essence of the charge was that the directors wrongfully failed to deal with IDS at arms' length by failure to seek competitive bids. As independent directors, one may assume

that if such a dereliction were called to their attention they might take action to correct it unless they were controlled by IDS to the point of immobilization. If there was no such control, however, the unaffiliated directors could have been asked to undo the wrong. Chief Judge Devitt's holding was simply that a conclusory allegation that there was such control was not enough in the circumstances. In the case at bar, there is no allegation of control. Futility is asserted because a majority of directors have themselves been named as defendants.

In the *Kauffman* case, *supra,* a shareholder brought a derivative suit on behalf of mutual funds alleging antitrust and Investment Company Act causes of action against many large mutual funds, their external investment advisers, directors affiliated with funds and advisers, and a trade association for the mutual fund industry. The Court of Appeals for the First Circuit in an opinion by Judge Aldrich, held that an allegation of *domination and control,* unsupported by underlying facts, does not satisfy the requirement of particularity. Moreover, since the *unaffiliated* directors, who constituted a majority of each board, were not named as defendants, and were not charged with acquiescence in the conspiracy, the fact that the named defendants participated was not enough to excuse demand upon the directorate. In the case at bar, as has been noted, the unaffiliated directors have been named as defendants.

Judge Aldrich went on to state, by way of dictum however, that "[w]here mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand upon them, plaintiff's suit should ordinarily be dismissed." (479 F.2d at 265) Judge Aldrich could not distinguish Judge Tyler's opinion in Papilsky v. Berndt, *supra,* but

thought it was wrong. (479 F.2d at 265, 266 n. 6, 2nd para.)

Judge Coffin, in a concurring opinion, disagreed that there was a "sharp distinction," for purposes of excusing demand under Rule 23.1 between actions which "could be thought to serve the interests of the company" and those of a fraudulent or self-dealing nature. 479 F.2d at 267. Judge Coffin also thought that "[w]hatever the significance for excusing demand of mere knowing acquiescence in impending major corporation actions in other settings, *see Liboff,* supra,[5] I believe that such passive acceptance by unaffiliated directors of the very transactions which justify their place on the directorate would be sufficient involvement or subservience to find them unlikely to respond meaningfully to a demand." 479 F.2d at 268.

Judge Tyler in *Papilsky, supra,* was concerned with a complaint, largely based on Moses v. Burgin, 445 F.2d 369 (1 Cir.), cert. denied sub nom., Johnson v. Moses, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971), in which it was charged that the investment adviser and the directors of the mutual funds for whose benefit the action was brought, had improperly allocated brokerage commissions for the benefit of the investment adviser instead of the fund, and that the Fund could have recaptured some of its commissions had its directors not participated in or acquiesced in the challenged practices.

The defendants there argued that plaintiffs' allegations of *domination and control* of the unaffiliated directors by the minority affiliated directors were insufficiently precise for purposes of Rule 23.1.

Judge Tyler denied the motion to dismiss upon two grounds: (1) that more than "mere control" had been alleged in his case; and (2) that the complaint alleged "that *all* directors participated in —or acquiesced in—the challenged trans-

5. Liboff v. Wolfson, 437 F.2d 121 (5 Cir. 1971).

actions, and that they were liable therefor." 59 F.R.D. at 97.

In the complaint at issue there is no allegation of control whatever, the particularity of which would require analysis. Nor is there an omission to charge with wrongdoing the unaffiliated directors, as in *Kauffman*.

■ This complaint has a bold and expansive thrust. It attempts to solve the problem of the specificity of demand under Rule 23.1, in the case of mutual funds by a simple device. It simply sues *everybody*, including the *unaffiliated* directors. The plaintiff then "bootstraps" the argument, by asserting with an air of injured innocence, that since she is suing the *unaffiliated* directors as well, how can she be expected to go to them for relief? Aside from the circumstance that she has not served any of the directors, save one, I cannot agree that the mere naming of an unaffiliated director, who is charged with approving a challenged transaction, can create an irrebuttable presumption that he would not entertain a claim for relief against others. It is not for the plaintiff herself to build a wall around the unaffiliated director of a mutual fund, and then tell him he cannot jump over it. In short, merely naming the directors as defendants does not establish that a demand would have been futile.

The difficulty here is that the directors are directors of *all three* mutual funds, as the complaint shows. The demand, if made by the plaintiff, would be that the directors of Mutual should sue Variable and Stock, and, if necessary, themselves as directors of the latter.

The conflict of interest is apparent. If a director of Mutual should try to make up for his alleged breach of fiduciary duty to Mutual by suing Variable and Stock, he could be in breach of his other fiduciary duty to Variable and Stock to resist the claim.

■ A real conflict of interest makes a demand futile. Cathedral Estates v. The Taft Realty Corporation, 228 F.2d 85, 88 (2 Cir. 1955). The directors are in such conflict here.

■ On a motion to dismiss, the usual standard of whether any set of facts can be shown which would prove futility is applicable. Jannes v. Microwave Communications, Inc., 57 F.R.D. 18 (N.D.Ill.1972).

The question remains whether demand on the shareholders is required. Since this action is brought under the Investment Company Act of 1940, we need not look to state law to determine whether a demand on the shareholders is necessary. Levitt v. Johnson, 334 F.2d 815, 819 (1 Cir. 1964), cert. denied, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965). There the court held that to require that a demand be made upon the shareholders would be contrary to the policy of the Investment Company Act. See also *Jannes, supra.* Moreover, since the shareholders could not ratify the alleged violations of federal law, no demand is required. See Dopp v. American Electronic Laboratories, Inc., 55 F.R.D. 151 (S.D.N.Y.1972).[6]

The motion to dismiss the complaint is denied.

It is so ordered.

---

6. Some courts have also stressed that it is unreasonable to require proxy solicitation where there are thousands of shareholders.

Levitt v. Johnson, *supra;* Weiss v. Sunasco, Inc., 316 F.Supp. 1197 (E.D.Pa.1970).