**Frederick H. BROOKS et al., Plaintiffs,**

**v.**

**AMERICAN EXPORT INDUSTRIES, INC., et al., Defendants.**

**No. 71 Civ. 5128.**

United States District Court, S. D. New York.

Sept. 29, 1975.

Lipper, Lowey & Dannenberg, New York City, for plaintiffs.

Pomerantz, Levy, Haudek & Block, New York City, for defendants.

PIERCE, District Judge.

## OPINION AND ORDER

This is a consolidated shareholders' derivative action and shareholders' class action brought by stockholders of defendant American Export Industries ("AEI") pursuant to 15 U.S.C. §§ 77v (a) and 78aa et seq. Plaintiffs seek to set aside a management contract whereby AEI's subsidiary, defendant National Equipment Rental, Ltd. ("NER") was to be managed by defendant Canberra Management Corporation ("Canberra"). Plaintiffs also attack the subsequent sale of NER by AEI to defendant North American Car Corporation ("NAC"), alleging that the consideration received by the directors of Canberra as part of the sale of NER was received in violation of the fiduciary duties of the directors and officers of NER and AEI. Count One of the amended consolidated complaint sets forth the derivative claim; Count Two sets forth the class action claim for damages. Certain defendants now move before this Court to dismiss the derivative claim for plaintiffs' failure to have made a formal demand upon the directors of AEI, as required by Rule 23.1 Fed.R.Civ.P.; the motion is one for judgment on the pleadings pursuant to Rule 12(c). Plaintiffs oppose the motion, asserting that the complaint sets forth with sufficient particularity the reasons why such demand on the board of AEI would have been futile, and cross-move for leave to submit evidence outside the pleadings in opposition to defendants' motion to dismiss. Having determined that a demand upon the board of AEI was not excused, and that plaintiffs' proffered deposition evidence only serves to support that conclusion, the Court denies plaintiffs' motion and grants defendants' motion to dismiss.

For purposes of this 12(c) motion, the Court must treat all the allegations of the complaint as true. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264 (S.D.N.Y.1972), *aff'd,* 495 F.2d 228 (2d Cir. 1974); see 2A J. Moore, Federal Practice ¶ 12.15 (2d ed. 1974). Thus, the allegations of Count One are summarized as follows.

Defendant AEI as a Delaware corporation, with its principal place of business in the State of New York. In

1967, AEI acquired Dragor Shipping Corporation, of which NER was a subsidiary. Defendants Clements and Fates, formerly directors of Dragor, became directors of AEI and continued in that capacity until the events herein sued upon. Defendant Weiser, formerly a director and officer of Dragor and a director of NER, became a director and officer of AEI while remaining an officer of NER. In January, 1970, Weiser resigned from his positions in AEI and became president and chairman of NER. Defendants Weisberg and Brahms had been officers and directors of NER before the Dragor acquisition and remained in those positions. By August, 1969, NER had become a wholly-owned subsidiary of AEI.

At various times before the formation of Canberra and before the execution of the challenged management contract, a significant number of directors of AEI were also directors of NER. Such individuals included defendants Weiser, Isbrandtsen, Rising, Fates and Gale. Defendants Brahms, Weisberg, Batchelor and Pierce were directors of NER before and at the time of the Canberra management contract; none of these men had ever been directors or officers of AEI.

Thus, at the time of the Canberra management contract, December 18, 1970, the composition of the three companies' boards was as follows: The board of AEI consisted of defendants Clements, Fates, Isbrandtsen, Rising, Will and Gale. The board of NER consisted of defendants Weiser, Brahms, Weisberg, Isbrandtsen, Rising, Fates, Gale, Batchelor and Pierce. The board of the newly formed Canberra Management Corp., and the sole stockholders thereof were defendants Weiser, Weisberg, Brahms, Batchelor, Phelan, McArdle, Milberg and Schmidt. At the time of the challenged management agreement, none of the Canberra directors or stockholders were directors of AEI. Only defendant Weiser had ever been an AEI director; he resigned from AEI before the formation of Canberra and before the execution of the management contract. Thus, at the time pertinent to the management contract, there was significant overlap between the boards of NER and AEI, and between the boards of Canberra and NER. However, at no time was there ever any overlap between the boards of AEI and Canberra.

Plaintiffs charge that, in 1970, AEI was confronted with severe financial difficulties and had participated in acts of default under a revolving credit agreement. At this time, NER was still profitable; under the terms of an amendment to the revolving credit agreement, it appeared that AEI would be forced to sell off NER in order to satisfy its creditors. The complaint charges that the directors of NER were fully aware of this situation, and that in December, 1970, Canberra was organized by the defendants who became its directors and shareholders as the first step in a scheme to appropriate AEI's most valuable asset: NER.

According to plaintiffs, the Canberra defendants, through fraudulent devices and duress perpetrated upon AEI, caused AEI to consent to the management contract between NER and Canberra whereby the Canberra defendants diverted from AEI and appropriated for themselves management control of NER, in anticipation of the sale of NER. Canberra took control of NER from AEI effective January 1, 1971, for a term of six years; NER paid Canberra $710,-000 as the first quarterly installment under the contract to manage NER. In September, 1971, following negotiations participated in by the Canberra defendants, AEI sold NER to NAC. NAC agreed to pay AEI $21,000,000 for the acquisition and the Canberra defendants $2,073,000 for the surrender of control of NER and the purchase of Canberra.

All the above stated events are allegations of plaintiffs' complaint, deemed to be true for the purposes of this motion only.

In deciding this motion for judgment, it is equally important to state what is not charged by plaintiffs. There is no allegation that any of the AEI directors profited personally from either the management contract or the sale of NER. There is no allegation that any of the directors of AEI sat on the board of Canberra, owned stock in Canberra, or participated in the management of Canberra in any way. It is not alleged that the directors of AEI were under the control of the Canberra defendants, or that AEI's voting stock was in the control of the Canberra defendants. Nor is it alleged that plaintiffs ever made any demand upon the AEI board to institute an action against the Canberra defendants or whomever else plaintiffs charge with breach of fiduciary duty and self-dealing. Rather, plaintiffs allege that the defendant directors of AEI violated their fiduciary duties by their wrongful participation in the Canberra scheme. In paragraph 29 of the complaint, plaintiffs allege that:

"No demand has been made by the plaintiffs on the Board of Directors of AEI to institute and prosecute this action against the defendants named herein, because all of the directors of AEI at the time of the commencement of the action were named as defendants herein and have participated in and are personally liable for the wrongs complained of in this action, and said defendants still constitute a majority of the Board of Directors; and any demand upon them to institute such an action would have been futile and useless in that thereby they would be required to institute an action against themselves and any action so instituted by them would be friendly to the defendants and hostile to the interests of AEI and its stockholders."

In their motion for leave to submit evidence outside the pleadings, plaintiffs proffer the deposition testimony of defendant Keane, who became a director of AEI after the signing of the management contract with Canberra but before the sale of NER to NAC. The testimony is concerned with the discussions among the directors of AEI following the NER sale and the institution of the original shareholder action.

Plaintiffs urge that the testimony of Keane demonstrates that members of the AEI board were *not* hostile to the original shareholder derivative action, but rather that some felt the derivative action to be a possible way to protect AEI in the event that any AEI assets had in fact been improperly diverted by the Canberra defendants. Thus, plaintiffs now argue "deputization" of their action by AEI. However, the complaint, which is the matter before the Court on this motion, urges "futility."

For sound policy reasons, courts have been reluctant to admit additional materials in 12(c) motions for dismissal for failure to comply with Rule 23.1. The demand issue must be resolved on the pleadings; it "should not provide a forum for the resolution of factual issues, however presented." *Papilsky v. Berndt*, 59 F.R.D. 95, 98 (S.D.N.Y.1973), *appeal dismissed*, 503 F.2d 554 (2d Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 624, 42 L.Ed.2d 643 (1974). Further, defendants, in opposing the motion to submit additional material, offer other parts of the same deposition. This Court has no intention of turning this matter into a motion for summary judgment; Rule 23.1 issues are properly disposed of through motions for judgment on the pleadings. See *Brody v. Chemical Bank*, 482 F.2d 1111 (2d Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *Papilsky v. Berndt, supra*. While it is within the discretion of the Court to allow additional materials, here the Court concludes that the materials

offered in no way assist plaintiffs' opposition to the defense motion. The motion for leave to submit additional material is denied; the motion to dismiss shall be considered on the pleadings.

Rule 23.1 Fed.R.Civ.P., which governs all shareholder derivative actions brought in federal court, requires that the complaint

> "shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders . . . and the reasons for his failure to obtain the action or for not making the effort."

■ The policy underlying the demand requirement of Rule 23.1 is clear. The federal courts should not interfere in the matters of private corporations, nor should they sanction the interference by shareholders with the duties of the board of directors unless it is clear that the board has no intention of taking the appropriate action itself. *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263–64, 37 S.Ct. 509, 61 L.Ed. 1119 (1917); *Brody v. Chemical Bank,* No. 75–7049, 517 F.2d 932 (2d Cir. 1975). "Rule 23.1 is a rule of policy, . . . grounded upon historical antecedents." *Phillips v. Bradford,* 62 F.R.D. 681, 686 (S.D.N.Y.1974). The corporation on whose behalf a shareholder derivative action is brought is usually in a better position to pursue a major lawsuit; the corporation will have superior access to information about the transaction, more significant financial resources, and the board has its own fiduciary duty to protect the interests of the company. See *Abrams v. Mayflower Investors, Inc.*, 62 F.R.D. 361 (N.D.Ill.1974).

■ However, it is well established in this Circuit and elsewhere that a demand upon the board of directors need not be made if it is clear that such a demand would be futile. *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85 (2d Cir. 1955); see *Delaware & Hudson Co. v. Albany & Susquehanna R. R.*, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862 (1909). Specifically, where the directors themselves are accused of self-dealing, demand is deemed futile. *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263–64 (1st Cir. 1973); *Cathedral Estates, supra,* at 88; *Phillips v. Bradford, supra,* at 688. As a corollary to this rule, some courts have stated that when a number of the directors of the board of the corporation on whose behalf the action is brought also sit on the board of the other corporate party to the challenged transaction, demand may be excused. *Bradford v. Phillips, supra;* see *Barr v. Wackman,* 36 N.Y.2d 371, 368 N.Y.S.2d 497, 329 N.E.2d 180 (1975).

■ Directors who sit on both sides of the challenged transactions have been referred to as "affiliated"; demand is excused as to those situations because for an affiliated director to take up an action against the other party to the agreement would constitute a breach of his fiduciary duty to the second corporation. *Phillips v. Bradford, supra;* see *Treves v. Servel, Inc.*, 244 F.Supp. 773, 778 (S.D.N.Y.1973).

■ In this case there is no charge that the directors of AEI stood to profit individually from the management contract with Canberra or through the sale of NER to NAC. Therefore, demand cannot be excused on that ground. Further, none of the directors of AEI were affiliated with Canberra, the other party to the management contract, or with NAC, the purchaser of NER. Plaintiffs allege only two reasons why demand was not made. First, they state that the AEI directors were named as party defendants in this action. Yet that argument has been specifically rejected as a ground for excusing demand. *In re Kauffman, supra,* at 264. The *Kauffman* case, which discusses in detail the extent of the "futility" exception, has been repeatedly cited with approval by the Second Circuit. See, e. g., *Brody v. Chemi-*

*cal Bank*, 517 F.2d 932 (2d Cir. 1975); *Brody v. Chemical Bank*, 482 F.2d 1111, 1114 (2d Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). Indeed, both *Brody* decisions, the first requiring that a demand be made when the board has changed after the acts sued upon, and the second holding that a new demand must be made after the first complaint has been dismissed with leave to amend, indicate that the Second Circuit requires vigorous enforcement of Rule 23.1.

Plaintiffs' second rationale is that the AEI directors are themselves charged with having participated in and approved of the Canberra transactions. This argument has also been rejected by the courts. *Kauffman, supra*, at 265.

> "It does not follow . . . that a director who merely made an erroneous business judgment in connection with what was plainly a corporate act will 'refuse to do [his] duty in behalf of the corporation if [he] were asked to do so.' Indeed, to excuse demand in these circumstances—majority of the board approval of an allegedly injurious corporate act—would lead to serious dilution of Rule 23.1." (*Id.* citations omitted.)

As Judge Gurfein has stated:

> "I cannot agree that the mere naming of an unaffiliated director, who is charged with approving a challenged transaction, can create an irrebuttable presumption that he would not entertain a claim for relief against others." (*Phillips v. Bradford, supra*, at 688.)

In this case AEI has never been given the opportunity to sue upon the transactions into which plaintiffs allege AEI was coerced. Plaintiffs' own memorandum in support of the motion to submit additional material argues that the AEI board was not hostile to the derivative suit. None of the AEI directors stood to gain by the challenged transaction and none of the AEI directors were affiliated with Canberra or with NAC.

Plaintiffs have not shown that demand would have been futile.

Accordingly, plaintiffs' motion for leave to submit additional materials is denied. Defendants' motion for judgment on the pleadings as to Count One is granted. The derivative action is dismissed without prejudice.

So ordered.