762 F.Supp. 510 (1991)
In re SYMBOL TECHNOLOGIES SECURITIES LITIGATION.
Toshimi OYE, on Behalf of SYMBOL TECHNOLOGIES, INC., Plaintiffs,
v.
Jerome SWARTZ, et al.,
and
Symbol Technologies, Inc., Nominal Defendant.
Nos. CV 89-3735, CV 90-1318.
United States District Court, E.D. New York.
April 18, 1991.
*511 *512 Garwin Bronzaft Gerstein & Fisher, Esqs. by Scott W. Fisher, New York City, for plaintiffs.
Dewey Ballantine Bushby Palmer & Wood, by Sanford M. Litvack, New York City, for defendants.
Shereff, Friedman, Hoffman & Goodman, by Richard D. Weinberg, New York City, for nominal defendant Symbol.

MEMORANDUM AND ORDER
WEXLER, District Judge.
Plaintiff Toshimi Oye brings this derivative action on behalf of Symbol Technologies, Inc. ("Symbol Technologies" or "the Corporation") against defendants Jerome Swartz ("Swartz"), Raymond R. Martino ("Martino"), Frederic P. Heiman ("Heiman"), Kenneth M. Schlenker ("Schlenker"), Charles S. Strauch ("Strauch"), Harvey P. Mallement ("Mallement"), Edwin A. Deagle, Jr. ("Deagle"), Saul P. Steinberg ("Steinberg"), Lowell C. Freiberg ("Freiberg"), Brian T. Burke ("Burke") and Richard Bravman ("Bravman"). Defendants are officers and directors of Symbol Technologies; it is alleged that they wrongfully used their positions as fiduciaries to secure personal gains to the detriment of the Corporation. The complaint asserts two grounds to support a cause of action for breach of fiduciary duty, alleging misappropriation of corporate information (Count I) and corporate waste (Count II). Jurisdiction is premised upon diversity of citizenship, pursuant to 28 U.S.C. § 1332. Presently before the Court is defendants' motion to dismiss the complaint pursuant to Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, defendants' motion is granted, with leave granted to plaintiff to amend the complaint to the extent noted in this opinion.

BACKGROUND
Symbol Technologies is a Delaware corporation with its principal executive offices located in Suffolk County, New York. The Corporation develops, manufactures and sells portable bar code scanning equipment which employs laser technology to read data encoded in bar code symbols. Additionally, Symbol Technologies, through its wholly-owned subsidiaries, MSI Data Corporation ("MSI") and Vectran Corporation ("Vectran"), designs, manufactures and sells a number of other products including portable data collection systems and radio frequency data communication products. Symbol Technologies is a publicly-held corporation which currently trades on the New York, Boston, Philadelphia and Midwest Stock Exchanges. This action arises from a number of transactions involving the sale of Symbol Technologies stock during the period from May, 1989 through September, 1989. These same transactions are the subject of a class action against the Corporation which is also pending before this Court. The two actions were consolidated for pre-trial purposes by order dated June 21, 1990.
Plaintiff alleges that by April 30, 1989 (prior to the transactions complained of), defendants knew or should have known that Symbol Technologies was experiencing serious problems with orders for its portable data terminals, ("PDTs"), as well as with other MSI and Vectran products. Specifically, it is alleged that the lead times for these products had been extended beyond sixty days, which was the Corporation's stated time frame for product delivery, and that defendants knew or should have known that this would have an adverse impact on revenues, earnings, and the volume of orders. It is further alleged in the complaint that by April 30, 1989, defendants knew that the market for its *513 core scanner products was maturing and that the Corporation was dependent on PDTs for a greater portion of revenues.
On July 25, 1989, Symbol Technologies reported net earnings and earnings per share for the three-month and six-month periods ending June 30, 1989. These reports indicated a substantial increase in earnings over the corresponding periods for 1988. The adverse information regarding lagging orders for PDTs and other MSI and Vectran products was not disclosed until October 30, 1989, after which the price of Symbol Technologies stock began to decline. Plaintiff contends that the defendants' failure to disclose adverse information known to them, in light of continuing representations by the Corporation regarding increased earnings, had the effect of artificially inflating the value of Symbol Technologies stock.
Count I of the complaint asserts a claim against the officers and directors for selling stock in the Corporation in the absence of disclosure. The information on which the defendants allegedly traded was non-public and was known to them only by virtue of their fiduciary status. As such, plaintiff's claim impliedly asserts that the information was an asset belonging to the Corporation; by using the information for their own benefit and to the detriment of Symbol Technologies, the defendants are alleged to have breached a fiduciary duty owed to the Corporation.
Count II of the complaint asserts a claim against the directors and officers for breach of fiduciary duty based on corporate waste. Essentially, plaintiff seeks to recover all present and future costs and expenses incurred by the Corporation in defending the class action litigation, or as a result of a settlement or judgment in that action. Plaintiff also alleges that the Corporation has suffered a present injury in the marketplace as a result of defendants' acts.

DISCUSSION
Several issues are raised by defendants' motion to dismiss. First, defendants challenge the entire complaint for failure to make a demand upon the board of directors prior to bringing this action, or to sufficiently plead the reasons for not doing so, as required by Rule 23.1 of the Federal Rules of Civil Procedure. Second, Count I of the complaint is challenged under Rule 12(b)(6) as to certain defendants against whom no allegation is made that they personally sold stock or otherwise participated in the acts constituting the breach of duty that is alleged. Third, defendants challenge the sufficiency of the allegations contained in Count II, claiming that they are speculative and premature and therefore fail to state a claim upon which relief may be granted. Finally, this Court must consider whether a derivative action for breach of fiduciary duty should be permitted to proceed, and the extent to which fiduciaries may be held liable for damages, when a class action is also pending in which those same fiduciaries (the defendants herein) may be held liable for the same underlying conduct.

I. Motion to Dismiss Under Rule 23.1

Rule 23.1 of the Federal Rules of Civil Procedure requires that a complaint in a shareholder derivative action allege with particularity: (1) the plaintiff's efforts to obtain relief from the corporation prior to bringing the action; or (2) the reasons for not making that effort. See Fed.R.Civ.P. 23.1; Kaster v. Modification Sys., Inc., 731 F.2d 1014, 1017-18 (2d Cir.1984). The first part of the Rule as stated above is referred to as the "demand requirement," and it is the general rule that a shareholder must make a demand upon the board of directors to bring the action on behalf of the corporation. Moreover, the shareholder must generally give the board of directors an opportunity to either take action, or refuse to do so, before bringing the suit derivatively. The second part of the Rule acknowledges that there are exceptional circumstances under which the demand requirement may be excused. See Fed.R. Civ.P. 23.1; see, e.g., Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir.1955) (noting that "it is clear that under Rule 23(b) and its predecessors a demand *514 need not be made on the directors where such demand would be `futile,' `useless,' or `unavailing'") (citations omitted).
Until recently it has been unclear what the controlling law is when determining whether the demand requirement of Rule 23.1 is satisfied, or alternatively, excused. In a recently decided case, RCM Securities Fund, Inc. v. Heine, 928 F.2d 1318 (2d Cir.1991), the Second Circuit clarified the proper influences of the federal rule and the state law pertaining to shareholder demand. In RCM, the Court held that:
Rule 23.1 is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question. However, the adequacy of those efforts is to be determined by state law absent a finding that application of state law would be inconsistent with a federal policy underlying a federal claim in the action....
Id. at 1330.[1]
Like the case at bar, RCM Securities involved allegations of, inter alia, fraud and self-dealing by directors of a Delaware corporation. The Court held that Delaware law was controlling on the issue of whether demand should be excused. In so holding, the Court adopted the view espoused in Justice Stevens' concurrence in Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 543, 104 S.Ct. 831, 842, 78 L.Ed.2d 645 (1984), which likewise reasoned that "Rule 23.1 ... is only a procedural requirement empowering federal courts to determine from the pleadings whether the demand requirement has been met." RCM Securities at 1329. Thus, the precise issue before this Court is whether the plaintiff has sufficiently pleaded facts (federal procedural requirement) which would constitute grounds for excusing the pre-suit demand requirement under Delaware law (state substantive requirement). See id.; see also Cottle v. Hilton Hotels Corp., 635 F.Supp. 1094 (N.D.Ill.1986).
Plaintiff asserts in his complaint that no demand was made on the directors to initiate this action because such demand would be futile. See Complaint at para. 16. Under Delaware law, demand is excused by demonstrating futility under the following standard: the particularized allegations of the complaint must raise a reasonable doubt as to (i) director disinterest or independence or (ii) whether the directors exercised proper business judgment in approving the challenged transaction. Grobow v. Perot, 539 A.2d 180, 186 (Del.1988) (citing Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984)). The entire review is factual in nature and is within the sound discretion of the Court. Aronson at 815.
Plaintiff attempts to establish demand futility under the first prong of the Aronson test by establishing that a majority of the board of directors at the time the action was commenced were "interested" in the transactions which are the subject of the complaint. See Complaint at para. 16. The complaint further alleges that the director defendants "illicitly profited" from the sale of Symbol Technologies stock. Id. Although acts of self-dealing which involve a majority of the directors would generally support an excusal of demand, for the reasons stated below these conclusory allegations fall short of the particularized pleading requirements of both Rule 23.1 and the Aronson test. It is to be noted that the sufficiency of the allegations pleaded for the purposes of Rule 23.1 is also a matter that lies within the sound discretion of the Court. Papilsky v. Berndt, 59 F.R.D. 95, 97 (S.D.N.Y.1973) (citations omitted), appeal dismissed, 503 F.2d 554 (2d Cir.1974). Nonetheless, the Second Circuit requires strict enforcement of the "particularity" requirements of that Rule. See, e.g., Brody v. Chemical Bank, 517 F.2d 932 (2d Cir.1975); Brody v. Chemical Bank, 482 F.2d 1111, 1114 (2d Cir.), cert. denied, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). See also In re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); Brooks v. American Export Industries, Inc., 68 F.R.D. 506, 509 *515 (S.D.N.Y.1975); Phillips v. Bradford, 62 F.R.D. 681, 685 (S.D.N.Y.1974).
Plaintiff alleges that defendant-directors Heiman, Swartz and Mallement each sold stock between May and October of 1989, a period during which the value of Symbol Technologies stock was artificially inflated, and additionally that at the time they were in possession of inside information regarding the true value of the stock. Plaintiff relies upon these defendants' status as directors to raise the inference that they knew about the lagging orders and otherwise bleak outlook for projected revenues. On the other hand, defendants cite Ballan v. Wilfred American Educ. Corp., 720 F.Supp. 241 (E.D.N.Y.1989), for the proposition that "outside directors," Mallement, for example, cannot be charged with knowledge of internal adverse information solely by virtue of their positions as directors. Defendant misses the point of Ballan.
Ballan was a case involving fraud, in which the court refused to charge outside directors with knowledge of the fraudulent practices which were being conducted by the corporation for purposes of establishing liability. See 720 F.Supp. at 254. There are two important factual distinctions between Ballan and the case at bar. First, the complaint in this action charges the outside directors with knowledge of information which is central to the usual and necessary management of the corporation's business affairs, not the deceptive practices of insiders. Second, the issue presented herein is whether the directors, by virtue of their fiduciary status, can be charged with such knowledge for purposes of establishing demand futility, not to establish liability at trial. At least for this purpose the inference should be allowed because the precise extent of each director's knowledge, along with information about when and how he received it, is peculiarly within the possession of the defendants and cannot be known to plaintiff prior to discovery. Id.
However, an alternative ground exists in support of the motion to dismiss. The fourth director who is allegedly "interested" in the transactions complained of is defendant Steinberg. If it was sufficiently pleaded that Steinberg profited personally from the sale of stock during the relevant time period, then the allegations of the complaint would establish that a majority of the board was "interested" and that demand should be excused on the grounds of futility.[2] The complaint, however, makes no reference to Steinberg's involvement except to list "Steinberg's affiliates" as having sold a large number of shares in May, 1989. See Complaint at para. 15. No explanation is provided as to the identities of these "affiliates," and no theory is offered as to the way in which defendant Steinberg profited from the transactions. Although plaintiff's affidavit may arguably explain this sufficiently, it cannot be considered on this motion. See Fed.R.Civ.P. 12(b). Accordingly, the complaint herein is deficient, see Fed.R.Civ.P. 23.1, and defendant's motion to dismiss is granted with leave to replead on the subject of this deficiency.[3]

II. Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true, Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. *516 1079, 1132, 31 L.Ed.2d 263 (1972), and the complaint must be construed in a light most favorable to plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Furthermore, a complaint cannot be dismissed for failure to state a claim unless it appears, beyond a doubt, "`that the plaintiff can prove no set of facts in support of [a] claim which could entitle him to relief.'" Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). With these principles in mind, the Court turns to address the motion at bar.

A. Misappropriation Claim
Count I of the complaint is dismissed with prejudice as against defendants Martino, Deagle, Strauch and Freiberg. There is no allegation that any one of these defendants sold or otherwise profited from the sale of Symbol Technologies stock during the relevant time period. Similarly, no corporate action is alleged in which these defendants participated or acquiesced. In short, no breach of duty is alleged under Count I of the complaint as against these defendants.
With regard to defendants Steinberg, Swartz, Heiman, Schlenker, Mallement, Burke and Bravman, the motion under Rule 12(b)(6) must be denied. Plaintiff has alleged that each of the above-named defendants profited from insider trading of Symbol Technologies stock, thereby breaching a fiduciary duty owed to the Corporation. With specific regard to defendant Steinberg, although plaintiff may not have pleaded the facts sufficiently to withstand a motion to dismiss under Rule 23.1, it cannot be said that Count I of the complaint fails to state a claim against Steinberg under the parameters of Rule 12(b)(6). The complaint alleges participation on the part of Steinberg and identifies the dates of the transactions through which Steinberg allegedly profited. See complaint at para. 16. Plaintiff is therefore entitled to replead Count I against defendants Steinberg, Swartz, Heiman, Schlenker, Mallement, Burke and Bravman.

B. Corporate Waste Claim
As a basis for bringing a claim against the directors and officers for corporate waste, plaintiff alleges violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Securities and Exchange Commission Rule 10b-5, 17 CFR 240.10b-5 (1990), ("Rule 10b-5"), promulgated thereunder. For the reasons set forth below, the Court finds that this cause of action is premature.
Plaintiff's complaint states in part:
If Symbol Technologies is caused to pay amounts with regard to the claims asserted in the Class Action, or is caused to pay any legal fees and incidental expenses in connection with defending such claims, such payments will constitute a waste and gift of Symbol Technologies corporate assets.
Complaint at para. 27.
A waste or gift of corporate assets may arise anytime an asset of a corporation is transferred, lost or destroyed. The essence of a claim of gift is lack of consideration; the essence of waste is "the diversion of corporate assets for improper or unnecessary purposes." See Michelson v. Duncan, 407 A.2d 211, 217 (Del.1979). Plaintiff contends that defendants' acts constitute violations of the securities laws and that defendants should therefore be liable for all costs incurred in defending the class action. Assuming, without deciding, that these facts could support a claim for corporate waste, the damages claimed are not recoverable in this action. First, plaintiff does not attempt to establish the specific violations of federal law, relying instead upon the outcome of the class action. See Complaint at para. 27. Unless plaintiff alleges and proves these violations, defendants cannot be held liable for the costs of defending a potentially baseless suit. Second, and also with regard to the class action, no judgment has been rendered, nor a settlement reached; therefore, no injury has been sustained for which plaintiff may sue to recover. Since both of the damages claims addressed above hinge entirely on the outcome of another pending action, this *517 cause of action is more appropriately treated as an action for indemnification, which has not yet accrued.
Under this same theory, plaintiff also asserts a right of recovery for injuries sustained in the marketplace. Plaintiff alleges generally that "the director defendants' acts have undermined Symbol Technologies' credibility in the securities market and have jeopardized the continued public acceptance and marketability of its stock to the injury of the Company...." Complaint at para. 28. In the Court's view, this type of boilerplate language is not sufficient to withstand a motion to dismiss. Defendants are entitled to know more specifically what damages are being claimed, as well as the extent of those damages. For example, plaintiff could show present injury to the Corporation by demonstrating a lessened ability to attract public capital investment, or to obtain institutional financing. See, e.g., Simon v. New Haven Board and Carton Co., Inc., 393 F.Supp. 139, 143 (D.Conn.1974), aff'd, 516 F.2d 303 (2d Cir. 1975). Plaintiff could then specifically allege the damages attributable to such loss of credibility in the marketplace. Finally, these damages must be shown to flow directly from the wrongful acts of defendants, and not to the mere commencement of legal proceedings against the Corporation. So stated, the damages claimed by plaintiff could properly be sought in a future derivative action. Accordingly, Count II of the complaint is dismissed without prejudice.

III. Damages

In the event that plaintiff repleads in this derivative action, the fact that there may be private Rule 10b-5 class actions for damages, or an administrative suit brought by the Securities and Exchange Commission pending in federal district court, or both, will not be a basis for dismissal. Delaware has long recognized the availability of a stockholder derivative action to recover profits obtained by corporate insiders through a breach of their fiduciary duties. See Brophy v. Cities Services Co., 31 Del.Ch. 241, 70 A.2d 5 (1949); see also Diamond v. Oreamuno, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 85, 248 N.E.2d 910, 915 (1969); Walton v. Morgan Stanley & Co., Inc., 623 F.2d 796, 798 (2d Cir.1980). Contra Freeman v. Decio, 584 F.2d 186 (7th Cir.1978) (rejecting Diamond rationale and holding that derivative action to recover profits of corporate insiders was not permitted under Indiana law). Building on Brophy, the New York Court of Appeals, in Diamond, ruled that damages may be awarded in a derivative action based on a breach of fiduciary duty, absent a showing of actual injury to the corporation, and even if the possibility exists that some third party may in the future bring a superior claim based on the same conduct. Diamond, 301 N.Y.S.2d at 86, 248 N.E.2d at 915. The Diamond case has been interpreted as permitting double recovery against corporate insiders for a single course of conduct constituting a breach of fiduciary duty. See Gordon v. Fundamental Investors, Inc., 362 F.Supp. 41, 46 (S.D.N.Y.1973).
The reasoning of the Diamond case was based on sound policy at the time, but relied on facts which have significantly changed in the twenty-two years since that decision was rendered. In Diamond, the defendants were a director and an officer of the corporation on behalf of which the action was brought. They were alleged to have sold their own personal stock in the corporation on the basis of inside information acquired by them solely by virtue of their positions as fiduciaries. See 301 N.Y. S.2d at 79, 248 N.E.2d at 911. Permitting the derivative action to proceed, the court stated that:
the function of such an action ... is not merely to compensate the plaintiff for wrongs committed by the defendant but, ... "to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates."
Id. at 81, 248 N.E.2d at 912 (citation omitted). Indeed, this policy finds support in the law of agency. The Restatement Second of Agency states:
An agent who acquires confidential information in the course of his employment *518 ... has a duty to account for any profits made by the use of such information, although this does not harm the principal ... So, if [a corporate officer] has "inside" information that the corporation is about to purchase or sell securities, or to declare or to pass a dividend, profits made by him in stock transactions undertaken because of his knowledge are held in constructive trust for the principal.
Restatement (Second) of Agency § 388 comment c (1958). The court in Diamond went on to state that its primary concern in cases like this is "to decide, as between the corporation and the defendants, who has a higher claim to the proceeds derived from the exploitation of the information." Diamond, 301 N.Y.S.2d at 81, 248 N.E.2d at 912.
However, the decision in Diamond also rests on the unavailability of an effective remedy under federal law. To this point, the court therein noted that:
A class action under the Federal rule might be a more effective remedy but the mechanics of such an action have, as far as we have been able to ascertain, not yet been worked out by the Federal courts and several questions relating thereto have never been resolved.... In view of the practical difficulties inherent in an action under the Federal law, the desirability of creating an effective common-law remedy is manifest.
Id. at 84-85, 248 N.E.2d at 914-15. Today, twenty-two years after the decision in Diamond, it is the Court's view that the Rule 10b-5 class action has become the type of effective remedy for insider trading which the New York Court of Appeals had earlier envisaged. See Freeman, 584 F.2d at 195. Furthermore, and contrary to popular interpretation, the court in Diamond did not advance the desirability of permitting double recovery. It merely held that the defendant's claim of possible double liability was insufficient to provide a basis for dismissing the suit. At least one other court in this Circuit has recognized the inequity of such a result. See Gordon v. Fundamental Investors, Inc., 362 F.Supp. 41, 46 (S.D.N.Y.1973) (noting that "[w]hile it is true that double recovery is not always a bar as, where the defendants wrong both their corporation and purchasers of stock from them [citing Diamond], such a bizarre result, should be avoided, especially where breach of fiduciary duty may be found without proof of scienter") (citation omitted).
If damages are awarded in this derivative action, to the extent that actual injury to the corporation is not proved, the profits defendants will be forced to disgorge if liability is established will be held in trust pending the resolution of related proceedings. The Second Circuit has upheld such an arrangement in the context of a suit brought by the Securities and Exchange Commission (in anticipation of future private actions). See Securities and Exchange Commission v. Texas Gulf Sulphur Co., 446 F.2d 1301, 1307-1308 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971). The Court could, at the appropriate time, fashion the particular requirements of such a Trust, including the duration and the manner in which application could be made for its disposition. At the end of the specified period any money remaining undisposed of would become the property of Symbol Technologies.[4]

CONCLUSION
Based on the reasons stated above, defendants' motion to dismiss is granted as follows: (1) Count I is dismissed with prejudice as against defendants Martino, Strauch, Deagle and Freiberg; (2) as against all other defendants, Counts I and II are dismissed without prejudice, to allow for leave to replead to the extent noted in this opinion.
SO ORDERED.
NOTES
[1] In the case at bar, as in RCM Securities, the qualification of an inconsistent federal policy is of no relevance. In fact, there are no federal claims in this action.
[2] The information relied upon in determining the makeup of the Board at the time of commencement of this action comes from defendants' affidavit in support of the motion to dismiss. Footnote 6 states: "the Symbol Board of Directors consisted of seven members: defendants Swartz, Martino, Heiman, Mallement, Deagle, Steinberg and Freiberg. See Complaint para. 6. Thus, plaintiff must demonstrate that at least four of these directors are interested and incapable of exercising their business judgment in good faith." However, plaintiff's complaint lists eight individuals as directors. See Complaint para. 6. If there were, in fact, eight members of the Board of Directors at the time this action was commenced, then demand would not be excused unless five of them were interested directors.
[3] It should be noted that there is no prejudice to defendants in permitting plaintiff to replead in view of defendants' knowledge of the wrongs charged against them in the class action, which conduct serves as the basis for this derivative action.
[4] The court in Freeman recognized that in many cases, since the claims of the injured investors may completely deplete the fund, the corporation might ultimately end up poorer for having brought the suit due to the cost of litigation. See 584 F.2d at 195 n. 36. The Court notes that this should certainly be a consideration for the derivative plaintiff.