Bernard LEFF, et al., Plaintiffs,

v.

CIP CORPORATION, et al., Defendants.

No. C-3-81-367.

United States District Court,
S. D. Ohio, W. D.

March 18, 1982.

J. Michael Gottesman, New York City, for plaintiffs Bernard Leff and Leonard Brown.

Dennis M. Doyle, James Burke, Richard L. Creighton, Jr., George Raymond Drew, Cincinnati, Ohio, for defendants Frank Homan and Auto Vehicle Parts Co.

R. Joseph Parker, Cincinnati, Ohio, for defendants CIP Corp., Robert Beischel, Paul Homan, William Miller, R. Wayne Smith, David H. Todd and William Van Lokeran.

John P. Scahill, Cincinnati, Ohio, for defendants Buddy Ross and Norris Kindell.

DECISION AND ENTRY ON MOTION BY DEFENDANTS FRANK HOMAN AND AUTO VEHICLE PARTS COMPANY TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MOTION GRANTED IN PART AND DENIED IN PART

RICE, District Judge.

The captioned cause is before this Court upon a motion by defendants Frank Homan and Auto Vehicle Parts Company (AVP) to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The motion is based on five grounds, to wit:

(1) The action is barred by the terms of the May 5, 1981, Settlement Agreement under which the plaintiffs waived the claims they are now asserting;

(2) Plaintiffs' claim pursuant to § 13(d) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78m(d), is deficient because no private cause of action exists under § 13(d);

(3) Plaintiffs have no standing under § 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), to obtain the relief they request;

(4) Homan and AVP are not liable under § 14 of the 1934 Act, since plaintiffs do

not allege facts sufficient to indicate that defendants participated in or permitted use of their names in any proxy solicitation, or are liable as "aiders and abettors" or "control persons;"

(5) Plaintiffs' derivative claims fail to allege facts sufficient to satisfy the "demand" requirements for derivative suits found in Fed.R.Civ.P. 23.1.

For the reasons set forth below, defendants' motion is granted in part and denied in part. The motion is granted to the extent that the amended complaint sets forth a cause of action under § 13(d) of the 1934 Act. The motion is denied in all other respects.

## I. FACTS

The facts in this case are relatively complex but are not disputed in any substantial respect by the parties. This action arises out of a proxy contest between the defendants, the CIP Corporation (CIP), an Ohio corporation, and directors and shareholders of CIP, on the one hand, and the plaintiffs, shareholders of CIP and members of the CIP Corporation Committee for New Management (CNM), a group seeking to remove and replace the current directors and management of CIP, on the other. AVP is a Kentucky corporation that owns approximately 16% of CIP's outstanding shares. Frank Homan is the principal shareholder of AVP and the brother of defendant Paul Homan, a director of CIP.

The parties in the instant case first clashed in the winter and spring of 1981. Beginning in January of that year, Time-Tec, Inc., an Ohio corporation, solicited CIP shareholders, offering to buy their shares of CIP common stock in exchange for Time-Tec promissory notes. Apparently, several members of the CNM were affiliated with Time-Tec. Shortly after the solicitation commenced, CIP filed an action in the Federal Bankruptcy Court in the Southern District of Ohio, Civil Action No. C–3–81–235, contending that Time-Tec's solicitation constituted an unregistered sale of securities and an illegal tender offer. In April the Bankruptcy Court ruled on CIP's motion for a preliminary injunction, finding a reasonable probability that CIP would prevail on its claim against Time-Tec but denying the injunctive relief requested, since the Bankruptcy Court lacked jurisdiction over Time-Tec.

After the decision of the Bankruptcy Court, members of the CNM filed a Schedule 13D with the Securities and Exchange Commission (SEC), stating their intent to elect a new slate of CIP directors and to gain control over CIP. On April 8 CIP filed an amended complaint in the Bankruptcy Court, alleging that Time-Tec and the CNM members had violated provisions of the Securities Act of 1933, the 1934 Act, and Ohio law. CIP subsequently refiled the complaint in this Court, and sought a temporary restraining order. On April 15, 1981, this Judge granted the motion, prohibiting the solicitation of proxies or purchase of CIP shares by Time-Tec and postponed CIP's annual meeting pending a full hearing on CIP's motion for a preliminary injunction.

Shortly thereafter, Time-Tec and the CNM filed an amended counterclaim, naming the defendants in the instant action as counterclaim defendants. The counterclaim alleged that defendants had violated Sections 10(b), 13, 14 and 16 of the 1934 Act, by failing to disclose the alleged common control of AVP and CIP, AVP's alleged efforts to keep the existing CIP management in office, and by failing to file proper reports pursuant to Sections 13, 14.

On May 5, 1981, the parties to the above litigation executed a Settlement Agreement, whereby all parties dismissed their claims and agreed to permit CIP's annual meeting and directors' election to go forward. CIP agreed not to nominate more than six directors, not to propose a staggering of the terms of CIP directors, and to permit shareholders who obtained their shares from Time-Tec to vote at the annual meeting. The agreement included the following clause:

The CIP Committee for New Management covenants that it will not sue CIP Corporation, the Directors, Fidelity Federal Savings & Loan Association, Auto Vehicle Parts Company, John C. Porter, or Frank Homan, their subsidiaries, offices, directors, agents, employees, succes-

sors, heirs, executors, administrators, personal representatives, attorneys, and assigns, individually or collectively, and will not prosecute further any claims, demands, or causes of action arising out of the events described in the pleadings, including without limitation the amended verified counterclaim, in Case No. C–3–81–235, or which could have been alleged or asserted in said action. This covenant of the CIP Committee for New Management shall not under any circumstances preclude an action by CIP against any person and it shall not be deemed a violation of this covenant if a member of CIP Committee for New Management is elected a director and votes in favor of or causes the Corporation to take such legal action.

At the June 30, 1981, CIP annual meeting, four incumbent directors (all defendants in the instant case) were elected, as were two of the plaintiffs, Messrs. Brown and Leff, to the six-member Board of Directors.

On July 2 plaintiffs filed the instant action, and on July 16 AVP and Frank Homan filed a motion to dismiss the complaint. On July 30 the remaining defendants filed an answer and counterclaim, alleging that various activities by the plaintiffs concerning the annual meeting violated § 14 of the 1934 Act and that plaintiffs breached the Settlement Agreement. On September 2 this Court granted plaintiffs' motion to file and serve an amended and supplemental complaint.

The amended complaint invokes the jurisdiction of this Court pursuant to the 1934 Act, 15 U.S.C. § 77v, and "the Ohio Revised Code and the common law," and presents five counts. Count I seeks injunctive relief under § 14 of the 1934 Act and Rule 14a–9, 17 C.F.R. § 240.14a–9 (1981), promulgated thereunder, contending that the description of the pre-settlement litigation in CIP's proxy solicitation materials for the annual meeting was false and misleading with respect to material facts. In particular, Count I alleges, among other things, that CIP's proxy statement stated that plaintiff's counterclaim in the pre-settlement litigation "had [no] merit in the opinion of the

Company," that CIP had disclosed "all material information" to its stockholders, and that AVP was not an "affiliate" of CIP. In addition, Count I alleges that a CIP letter of June 10, 1981, to stockholders stated that the proxy statements contained a "complete description" of the pre-settlement litigation, and that a June 24, 1981, CIP letter to stockholders contained similar exculpatory statements regarding the litigation. As a result of these alleged § 14 violations, plaintiffs claim, CNM was able to elect only two directors and has been damaged.

The remaining Counts can be summarized quickly. Count II alleges that the director defendants and AVP failed and refused to file a Schedule 13D subsequent to the settlement agreement, as required by § 13(d) of the 1934 Act, and seeks injunctive relief. Counts III and IV are derivative claims. Count III alleges that the defendant directors improperly used corporate funds to maintain themselves in office, while Count IV alleges that the defendant directors improperly refused to take action against directors Ross and Kindell for their alleged violations of § 14 of the 1934 Act. Both Counts III and IV stated that any demand upon the directors to take action would be futile. Finally, Count V alleges that the defendant directors violated Rule 14a–11, 17 C.F.R. § 240.14a–11 (1981), by failing to amend the previously filed Schedule 14B to include Ross, and by not filing a Schedule 14B for CIP or AVP. Plaintiffs pray for injunctive relief, asking that the June 30, 1981, election of the four defendant directors be voided, proxies be resolicited, the election be rescheduled, that the defendants comply with the 1934 Act requirements. In addition, other injunctive relief is requested.

Only Counts I, II, III, and IV are covered by Frank Homan's and AVP's motion to dismiss.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED: SUSTAINED IN PART AND OVERRULED IN PART

For purposes of a Rule 12(b)(6) motion, this Court must accept as true all

well-pleaded allegations of the complaint. *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034–35 (6th Cir. 1979), and to sustain said motion, it must appear beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Neal v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981). So interpreting plaintiffs' allegations, this Court now considers the grounds for the motion to dismiss, seriatim.

## A. Settlement Agreement Does Not Bar the Action

■ Defendants argue that the terms of the Settlement Agreement bar plaintiffs from instituting the present action, and ask that said agreement be enforced. This contention is clearly without merit. As noted above, the pertinent clause of the agreement states that plaintiffs (in the instant case) would not sue defendants (including AVP and Frank Homan) for any claims "arising out of the events described in the pleadings . . . in Case No. C–3–81–235, or which could have been alleged or asserted in said action." Plaintiffs correctly point out that this clause refers to the events *before* the execution of the Settlement Agreement. The plain meaning of this language, particularly in the use of the past tense, indicates that the clause is not directed to litigation arising out of events *after* the execution of the agreement. Since Plaintiffs' amended complaint only covers alleged actions and events occurring *after* the date of the agreement, said agreement clearly does not bar the instant litigation.

It is true, as defendants contend, that there is some overlap of factual and legal issues between the pre-settlement litigation and plaintiffs' instant action. For example, the truth or falsity of plaintiffs' allegations in Count I, that defendants mischaracterized the pre-settlement litigation, can only be determined, it seems, by examining the legality of defendants' actions *before* the agreement. This fact, however, does not prove defendants' point. The events and acts upon which plaintiffs predicate liability occurred after the agreement, and the chronological scope of the factual bases for such liability is immaterial. Similarly, de-

fendants argue, the present litigation "arises out" of the pre-settlement events, and, as per the language of the agreement, is thus barred. While the present litigation is related to the pre-settlement litigation, the former only arose out of the latter *due to post-settlement events.*

Nor does the sentence in the agreement following the sentence discussed above preclude plaintiff's actions. This second sentence states that the agreement does not prevent CIP from suing any person, or prevent a member of the CNM elected to the Board of Directors from voting to cause CIP to sue any person. Defendants argue that this clause implies, by the absence of any reference to plaintiffs being able to sue, that only CIP can institute future litigation. Plaintiffs argue that, on the contrary, the clause was inserted at CNM's insistence so as not to prevent a CNM member elected to the Board of Directors from voting to take legal action against some or all of the defendants. While the language of the sentence lends credence to plaintiffs' interpretation, this Court finds it unnecessary to resolve the issue, since the second sentence simply does not affect the meaning of the previous sentence, which sentence only precludes litigation on pre-settlement claims.

■ Accordingly, the Settlement Agreement does not bar the filing of plaintiffs' complaint. Given this conclusion, this Court finds it unnecessary to address the argument that if the Settlement Agreement did bar the action, the agreement would be void or voidable under § 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a), which provides that any waiver "of compliance with any provision of this title or of any rule or regulation thereunder . . . shall be void." *Cf. Goodman v. Epstein*, 582 F.2d 388, 402 (7th Cir. 1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (§ 29(a) mandates that a release of claims "is valid *only* as to mature, ripened claims of which the releasing party had knowledge before signing the release.") (emphasis in original, footnote omitted).

B. *No Private Right of Action Under § 13(d)*

 Plaintiffs argue that AVP violated § 13(d) of the 1934 Act by failing to file a Schedule 13D subsequent to the Settlement Agreement. Defendants contend that the plaintiffs cannot state a claim under § 13(d), since that provision does not explicitly provide that anyone can sue to redress a violation of the provision. Plaintiffs must therefore rely on an implied, private right of action under § 13(d).

At the outset, it should be noted that several courts have assumed, without deciding, that a private remedy exists under § 13(d). *See, e.g., Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59 & n.9, 95 S.Ct. 2069, 2076 & n.9, 45 L.Ed.2d 12 (1975); *Bath Industries, Inc. v. Blot*, 427 F.2d 97 (7th Cir. 1970). More recently, several courts have directly addressed the issue and found that such a remedy does exist. *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216 (4th Cir. 1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *Spencer Co., Inc. v. Agency Rent-A-Car, Inc.*, [1981 Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,301 (D.Mass.1981); *Kirsch Co. v. Bliss and Laughlin Industries, Inc.*, 495 F.Supp. 488 (W.D.Mich.1980). However, four recent district court rulings have refused to imply a § 13(d) action. *SZRL Investments v. U. S. Realty Investments*, No. C81–327 (N.D. Ohio May 7, 1981); *Berman v. Metzger*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,857 (D.D.C.1981); *Gateway Industries v. Agency Rent-A-Car*, 495 F.Supp. 92 (N.D.Ill.1980) (*Gateway*); *Sta-Rite Industries, Inc. v. Nortek, Inc.*, 494 F.Supp. 358 (E.D.Wis.1980). In light of the Supreme Court's restrictive approach to implying private rights of actions, this Court finds the reasoning of the latter courts persuasive and accordingly holds that no private action can lie under § 13(d). To reach this result, the Supreme Court's current mode of analysis will be outlined, followed by an application of that analysis to § 13(d).

In 1964 the Supreme Court in *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) relied on the broad remedial purpose of § 14(a) of the 1934 Act to imply a private right of action for damages resulting from deceptive proxy solicitations. In the past decade, the Supreme Court has abandoned the *Borak* approach. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), set forth a four-pronged test to determine if a statute gives use to a private right of action. Those four factors were whether the plaintiff was a member of the class for whose benefit the statute was enacted, whether there was legislative intent to indicate creation of the remedy, whether implying the remedy was consistent with the legislative scheme, and whether the cause of action is one traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2087–88. More recently, the Court has narrowed even the *Cort v. Ash* analysis, placing legislative intent as the first and most important factor. If no explicit or implicit Congressional intent to create a private remedy can be discerned, the remaining *Cort v. Ash* factors need not be addressed. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 14, 100 S.Ct. 242, 244, 62 L.Ed.2d 146 (1980) (*Transamerica*); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979) (*Touche Ross*). *See also Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194, 1198 (6th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Gilman v. Federal Deposit Ins. Corp.*, 660 F.2d 688, 692 (6th Cir. 1981).

Applying this framework to § 13(d) reveals that no private right of action should be implied. By its terms, § 13(d) only requires that purchasers of five or more percent of any class of a corporation's registered securities file certain information with the SEC and the issuer of the security. Such information includes the identity of the persons making the purchase and the purpose of the purchase.[1] The Supreme

---

1. Section 13(d) reads, in pertinent part:

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security ..., is directly or indirectly the beneficial owner of more than 5 per centum of such class shall within ten days after such acquisition, send to the issuer of the security [and] ... each exchange where the security is traded, and file with the Commission, a statement containing such of the following

Court has held that the legislative intent component of the *Cort v. Ash* test is made up of three factors: the language of the statute, its legislative history, and its place in the legislative scheme. *Transamerica, supra,* 444 U.S. at 23–24, 100 S.Ct. at 249; *Touche Ross, supra,* 442 U.S. at 568–71, 99 S.Ct. at 2485–87.

First, the terms of § 13(d) do not create any rights but only constitute a reporting requirement. In *Touche Ross,* the Supreme Court held that there was no implied right of action under § 17(a) of the 1934 Act, a provision similar to § 13(d):

> In terms, § 17(a) simply requires broker-dealers and others to keep such records and file such reports as the Commission may prescribe. It does not, by its terms, purport to create a private cause of action in favor of anyone. It is true that in the past our cases have held that in certain circumstances a private right of action may be implied in a statute not expressly providing one. But in those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. (citations omitted) . . . By contrast, § 17(a) neither confers rights on private parties nor proscribes any conduct as unlawful.

442 U.S. at 569, 99 S.Ct. at 2485–86. Similarly, § 13(d) simply requires information to be filed with the SEC and the issuer and does not declare any conduct as unlawful.

Second, the language and legislative history of § 13(d) indicates that the information to be provided to the SEC and the issuer was to be "for the protection of investors." *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 26–35, 97 S.Ct. 926, 941–46, 51 L.Ed.2d 124 (1977); *Gateway, supra,* 495 F.Supp. at 98–99. To be sure, most, if not all, of the plaintiffs in this case are investors (i.e., own stock) in CIP. However, the injunctive remedies they seek are not so much to protect their investment as to gain control of CIP. Such a purpose attenuates plaintiffs' status as investors. More impor-

tantly, the legislative history on § 13(d) is silent on any private right of action. *Gateway, supra,* 495 F.Supp. at 99; Note, *Private Rights of Action for Damages Under Section 13(d),* 32 Stan.L.Rev. 581, 591–92 (1980). As the *Touche Ross* decision noted, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." 442 U.S. at 571, 99 S.Ct. at 2486.

Third, the enforcement scheme of the 1934 Act indicates that Congress expressly provides remedies elsewhere in the Act. Buyers and sellers of securities can sue for misstatements or omissions found in proxy materials under § 18 of the Act, 15 U.S.C. § 78r, while the SEC is granted authority to enjoin violations and prosecute persons under § 21 of the Act, 15 U.S.C. § 78u(d). Given the presence of these express remedies, it is doubtful that Congress "forgot" to provide a remedy for § 13(d). *Transamerica, supra,* 444 U.S. at 21, 100 S.Ct. at 247–48. Moreover, the *Touche Ross* court pointed out that:

> There is evidence to support the view that § 18(a) was intended to provide the exclusive remedy for misstatements contained in any reports filed with the Commission. . . .

442 U.S. at 573–74, 99 S.Ct. at 2488.

These three factors show an absence of legislative intent to imply a right of action under § 13(d). Thus, this Court finds it unnecessary to address the remaining *Cort v. Ash* factors.

The recent decisions holding contra are not persuasive. For example, *Dan River, Inc. v. Unitex, Ltd., supra,* relied exclusively on *GAF Corp. v. Milstein,* 453 F.2d 709 (2d Cir. 1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972), which in turn relied on the now discredited *Borak* decision. *Kirsch Co. v. Bliss & Laughlin Industries, Inc., supra,* declined to follow *Gateway,* and held that only a damage, but not an injunctive, remedy is foreclosed by the *Transamerica* and *Touche Ross* reasoning. The *Kirsch* court suggested that only

information and such additional information, as the Commission may by rules and regulations, prescribe as necessary or appropriate in the public interest or for the protection of investors. . . .

15 U.S.C. § 78m(d)(1).

injunctive relief, rather than damages, would aid investors during a tender offer. 495 F.Supp. at 491. Assuming the validity of this assertion, this Court agrees with *Gateway* that *Transamerica* and *Touche Ross* in no way turned on such a distinction. 495 F.Supp. at 96 n.8, 100–01. *See also California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (applying *Cort v. Ash* criteria to suit for injunctive relief under the River and Harbors Appropriation Act of 1899, and holding that there is no private right of action).[2]

Accordingly, plaintiffs cannot seek injunctive relief pursuant to § 13(d), since that provision does not grant an express or implied right of action.

C. *Standing Under § 14(a): Private Right of Action Exists and Transactional Causation is Sufficiently Alleged*

Section 14(a) of the 1934 Act prohibits any person from soliciting proxies in violation of SEC rules.[3] Plaintiffs contend that Frank Homan and AVP violated this provision when CIP mailed proxy materials to CIP shareholders which allegedly mischaracterized the pre-settlement litigation. The Court must first address plaintiffs' standing under § 14(a). The following section will then discuss the liability of Homan and AVP under § 14(a).

 There is no question that a private cause of action exists under § 14(a), since the *Borak* case expressly reached that conclusion. As noted above, while the *reasoning* of *Borak* is no longer valid, the *result* of the decision is still good law. *Touche Ross, supra,* 442 U.S. at 577, 99 S.Ct. at 2489; *Cannon v. University of Chicago,* 441 U.S. 677, 690 n.13, 99 S.Ct. 1946, 1954 n.13, 60 L.Ed.2d 560 (1979). Similarly, plaintiffs have standing despite the fact that they do not allege that they granted proxies in reliance on the allegedly illegal proxy material. In *Dann v. Studebaker-Packard Corp.,* 288 F.2d 201, 209 (6th Cir. 1961), the Sixth Circuit held that both tendering and non-tendering stockholders had standing to sue for violations of § 14(a). *Accord, Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 & 599 n. 28 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) (citing *Dann* ). While at least one court has held that only shareholders who granted proxies can sue under § 14(a), *see Gaines v. Haughton,* 645 F.2d 761 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), this Court has no reason to believe that *Dann* is not good law within the Sixth Circuit.[4]

**2.** This result is not altered by the Sixth Circuit's recent decision in *Mobil Corp. v. Marathon Oil Co.,* 669 F.2d 366 (6th Cir. 1981). There, the Court, applying the relevant standards outlined in the opinion herein, held that a private right of action could be implied for a party seeking *injunctive* relief under § 14(e) of the 1934 Act, 15 U.S.C. § 78n(e). At 370–73. In *Piper v. Chris-Craft Industries, supra,* the Supreme Court had held that no private action for *damages* could be implied under § 14(e), but reserved the question of whether an action for *injunctive* relief could be implied. 430 U.S. at 47 n.33, 97 S.Ct. at 952 n.33. The Sixth Circuit's answering of this question in the affirmative might, at first blush, lend support to the damages/injunctive relief distinction advanced by the *Kirsch* decision. However, aside from the fact that the *Mobil* court simply did not address the question of a private right of action under § 13(d), the reasoning therein does not support the *Kirsch* analysis. The *Mobil* opinion pointed out that § 14(e) prohibits, *inter alia,* any manipulative acts or practices in connection with any tender offer. An injunction would serve to prevent such practices without interfering with the tender offer battle.

At 371. In contrast, § 13(d) declares *no* conduct unlawful and merely provides for the filing of information. Indeed, the *Mobil* court expressly distinguished *Touche Ross, supra,* (dealing with § 17(a) of the 1934 Act), on this basis. *Id.* at 372–73 n.5. Hence, neither the holding nor the reasoning of the *Mobil Corp.* decision compels this Court to adopt the holding of the *Kirsch* decision.

**3.** Section 14(a) reads, in pertinent part:

It shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security....

15 U.S.C. § 78n(a).

**4.** In *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1178 n. 7 (6th Cir. 1979), the Sixth Circuit

■ Plaintiffs' formal standing under § 14(a) does not end the inquiry, however. Assuming that the alleged misstatements and omissions of fact in the defendants' proxy solicitations were "material" for securities act purposes, a question this Court does not pass on, the plaintiffs must make "a sufficient showing of causal relationship between the violation and the injury for which [they seek] redress...." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970). Such a causal nexus or "transactional causation" is satisfied when plaintiff "proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the [corporate] transaction." *Id.* See also, *Gaines v. Haughton, supra*, 645 F.2d at 775. Put another way, the harm to plaintiffs "must have resulted from the corporate transaction they authorized as a result of the false or misleading proxy solicitation." *Gaines v. Haughton, supra*, 645 F.2d at 776 (quoting *In re Tenneco Securities Litigation*, 449 F.Supp. 528, 531 (S.D. Tex.1978)).

■ Plaintiffs have sufficiently alleged transactional causation in the present case (amended complaint, ¶ 38). The harm the plaintiffs seek to remedy—the election of four defendant directors—resulted from, plaintiffs contend, the proxy solicitations of defendants which allegedly violated § 14(a). The "corporate transaction" complained of, the election of directors, was due to shareholders approval derived from proxy solicitation. When the election of directors is attacked, there is no doubt that the "proxy solicitation itself ... was an essential link in the accomplishment" of the transaction under *Mills*. See *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 654 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct.

1600, 63 L.Ed.2d 786 (1980); *Gaines v. Haughton, supra*, 645 F.2d at 776.

At least one court has taken this causation inquiry one step further, however. Accepting the elements of the § 14(a) analysis outlined above, the court in *Hundahl v. United Benefit Life Ins. Co.*, 465 F.Supp. 1349, 1368–70 (N.D.Tex.1979), nevertheless held that persons who did not *rely* on alleged misstatements in proxy materials had no standing under § 14. In *Hundahl*, the plaintiffs were disappointed shareholders of a target company, who sued after the successful completion of a tender offer, contending that the proxy solicitation of the tender offeror violated § 14(e).[5] The *Hundahl* court refused to allow plaintiffs who were not misled by alleged misstatements in the course of a tender offer to gain standing, although they had met the other § 14 standing requirements outlined above. The court reached this conclusion by relying on the legislative history of § 14 which, the court said, intended to afford shareholders the benefit of full disclosure during a tender offer. Persons who were *not* misled did not fall into this protected class. *Id.* at 1369. Similarly, plaintiffs in the present case do not allege that *they* were misled, but that *other* CIP shareholders were misled.

This Court will not apply the *Hundahl* limitation in the present case. First, the *Hundahl* court deemed it significant that the plaintiffs were seeking remedies for an "unusual" injury (diminution in stock value of stock not tendered) flowing only indirectly from alleged misstatements in the tender offer materials. *Id.* at 1369–70. In contrast, plaintiffs in the present case seek remedies for a typical injury (failure to elect plaintiff directors) flowing directly, as noted above, from allegedly illegal proxy

---

repudiated *Dann* in part, holding that *Cort v. Ash* superseded *Dann's* mode of analysis for implying rights of action. *Ryan*, which held that there was no private action under the Mail Fraud Statute, 18 U.S.C. § 1341, did not address *Dann's* holding with respect to shareholder standing under § 14(a). See *Lynch v. Fulks*, [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,831 (D.Kan.1980) at 90, 133.

5. Section 14(e) prohibits, *inter alia*, the omission of material facts or the making of untrue statements in connection with any tender offer. 15 U.S.C. § 78n(e). The present action, of course, does not involve a tender offer by defendants and plaintiffs do not charge defendants with § 14(e) violations. Nevertheless, the *Hundahl* court's discussion of the proper scope of § 14 remains applicable and deserves discussion by this Court.

solicitations. Second, the *Hundahl* reasoning can be criticized on the ground that it protects misusers of the proxy process from shareholders who recognized deceptions, only allowing shareholders who were successfully beguiled to sue. *Lynch v. Fulks, supra*, at 90, 134.[6] Thus, this Court is not persuaded that the *Hundahl* result should apply in the present case.

Accordingly, this Court holds that plaintiffs do have standing to sue under § 14(a).

### D. *Defendants' Liability Under § 14(a) Is Sufficiently Alleged*

█ Even assuming that plaintiffs have standing under § 14(a), Frank Homan and AVP argue that they are not liable, as they contend that they had no involvement in the preparation or release of the allegedly misleading proxy material by CIP. Plaintiffs assert that Homan and AVP are liable as "control persons" and/or "aiders or abettors," and that AVP would be liable under the doctrine of respondeat superior (amended complaint, ¶ 37). At this stage of the litigation, plaintiffs' allegations on these points do not fail as a matter of law.

█ Frank Homan and AVP would be liable as "control persons" if they "controlled" CIP and CIP were found to have violated § 14, unless the control persons "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation." 15 U.S.C. § 78t(a).[7] AVP owns 16% of the CIP stock, and Frank Homan is the principal shareholder of AVP. Defendants argue that such a small percentage of ownership in CIP cannot constitute "control." This, however, is too narrow a concept of "control." Regulations have defined control as meaning

the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 230.405(f) (1981). *See also Herm v. Stafford*, 663 F.2d 669, 685 (6th Cir. 1981); *G. A. Thompson & Co. v. Partridge*, 636 F.2d 945, 957–58 (5th Cir. 1981). Thus, control need not be based solely on the amount of stock ownership, or on active participation in the alleged wrongful act. *Holloway v. Howerdd*, 377 F.Supp. 754, 761 (M.D.Tenn.1973), *aff'd*, 536 F.2d 690 (6th Cir. 1975); *G. A. Thompson & Co. v. Partridge, supra*, 636 F.2d at 958. Finally, it is clear that the "good faith" and non-inducement provisos to the control person doctrine, § 78t(a), are affirmative defenses which must be established by the defendants, not disproved by the plaintiffs. *G. A. Thompson, supra*, at 958.

Thus, given that control under § 78t(a) is a "complex factual question," *SEC v. Coffey*, 493 F.2d 1304, 1317, 1318 (6th Cir. 1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975), this Court cannot hold at this time that Frank Homan and AVP are not control persons as a matter of law.

█ Similar reasons counsel against holding that Frank Homan and AVP were not "aiders and abettors" as a matter of law. Under that doctrine, the defendants must have had actual knowledge of the alleged wrongful scheme, intent to further the scheme, and rendered substantial assist-

---

**6.** The *Lynch* court further noted that in the three § 14(a) cases to reach the Supreme Court, it was either not clear if the plaintiffs had been misled, *see TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 443, 96 S.Ct. 2126, 2129, 48 L.Ed.2d 757 (1976); *Borak v. J. I. Case Co., supra*; and in *Mills*, the plaintiffs had *not* been misled by the proxy solicitations, having voted against a contested merger. *Mills v. Electric Autolite Co.*, 403 F.2d 429, 435 (7th Cir. 1968), *vacated and remanded*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Plaintiffs, of course, won relief in the latter two cases. *See Lynch v. Fulks, supra*, at 90, 134.

**7.** The provision in full reads:

*Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.*

ance to the primary wrongdoer. *SEC v. Coffey, supra,* 493 F.2d at 1316; *Herm v. Stafford, supra,* 663 F.2d at 685; *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 96–97 (5th Cir. 1975). Plaintiffs, having alleged facts sufficient to bring Defendant's under this definition (amended complaint, ¶ 37), must be given an opportunity to meet this standard of proof.

██ Finally, plaintiffs seek to hold AVP liable for the alleged misdeeds of Paul Homan (an officer and director of AVP and a director and Board Chairman of CIP) under the doctrine of "respondeat superior." Some courts have refused to apply respondeat superior to securities law violations, *e.g., Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975), but the doctrine can be applied with this Circuit, *see Holloway v. Howerdd, supra,* 536 F.2d at 694–95; *accord, Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

Accordingly, Frank Homan's and AVP's liability under § 14(a) is not foreclosed, at this stage, as a matter of law.

### E. *Demand Requirements For Derivative Actions Are Met*

In derivative actions by shareholders against corporations, the Federal Rules require that the complaint

> allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Fed.R.Civ.P. 23.1. Since derivative actions are brought on behalf of the corporation, the demand requirement outlined in Rule 23.1 fulfills the policy that the corporation itself, rather than shareholders, be given the opportunity to bring the suit. Comment, *The Demand and Standing Requirements in Stockholder Derivative Actions,* 44 U.Chi.L.Rev. 168 (1976).

In the present action, plaintiffs in Count III incorporate the alleged § 14(a) violations (amended complaint, ¶ 47), and also allege that the defendants improperly used corporate funds to process and mail solicitation material, that the defendant directors have acted "in concert" with Frank Homan and AVP to sell CIP property to AVP at artificially low prices, and that R. Wayne Smith has breached his fiduciary obligations to CIP as a director and president of CIP (amended complaint, ¶¶ 48–49). This count states that no demand was made upon CIP directors for reasons that the CIP directors are defendants in this case and participated in the unlawful acts alleged (amended complaint, ¶ 50).

In a similar fashion, Count IV alleges that defendant directors Kindell and Ross solicited ten CIP stockholders to approve the sale of CIP property to AVP noted above, a solicitation allegedly in violation of § 14(a). This count also states that plaintiffs unsuccessfully requested the CIP Board of Directors to bring action against Kindell and Ross (amended complaint, ¶ 64).

██ This Court finds that plaintiffs have satisfied the requirements of Rule 23.1 with respect to both counts. A demand on directors and shareholders need not be made if the effort would be futile. *In Re Western Tool & Mfg. Co.,* 142 F.2d 404, 408 (6th Cir. 1944), *rev'd on other grounds,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945); 3B Moore's *Federal Practice,* ¶ 23.1.19 at 87 (2d ed. 1981). However, a "bare allegation of futility is not sufficient," *Lucking v. Delano,* 117 F.2d 159, 160 (6th Cir. 1941) (*per curiam*), and, in the words of Rule 23.1, the reasons for the failure to make the demand must be made with "particularity."

██ In the present case, plaintiffs have alleged that the defendant directors acquiesced in and, in some cases, were parties to the alleged wrongdoing. Moreover, in Count IV a demand *was* made of the directors and they refused to act. When the complaint makes clear, as herein, that the directors would be (or are) opposed to the derivative suit, a formal demand on the directors would be futile and unnecessary under Rule 23.1. *See Clark v. Lomas & Nettleton Financial Corp.,* 625 F.2d 49, 53

(5th Cir. 1980); *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981); *Nussbacher v. Continental Illinois National Bank & Trust Co.*, 518 F.2d 873 (7th Cir. 1975), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976). The complaint thus states with "particularity" the reasons for the failure to make a demand on the directors.

■ While plaintiffs do not allege that they made a demand on the CIP shareholders, this Court holds that such a demand would not be "necessary" under Rule 23.1. When allegations of § 14(a) violations are intertwined with state corporate law violations, as illustrated by Counts III and IV in the present case, shareholders may not be in a position to pass judgment on the alleged wrongdoing of the directors. As discussed previously, § 14(a) was designed to afford shareholders accurate and complete information to insure a reasoned decision to grant a proxy or not. Allegations of § 14(a) violations suggest that the shareholders cannot make an informed decision and that any demand upon them would be unnecessary. *Galef v. Alexander*, 615 F.2d 51, 62–63 (2d Cir. 1980).

■ Defendants argue that, at least with respect to the demand on the shareholders, a different result would obtain under Ohio law. Given that federal claims are mixed with state law claims in Counts III and IV, it is not clear that state law concerning demand on shareholders should control in a federal suit. Indeed, relevant authority suggests it should not. *Levitt v.*

*Johnson*, 334 F.2d 815, 819 (1st Cir. 1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965); *Clairdale Enterprises, Inc. v. C. I. Realty Investors*, 423 F.Supp. 257, 260–61 (S.D.N.Y.1976); 7A C. Wright & A. Miller, *Federal Practice & Procedure*, § 1832 at 385 (1972).

However, this point need not be decided since Ohio law parallels the federal law outlined above. In *Claman v. Robertson*, 164 Ohio St. 61, 128 N.E.2d 429 (1955), apparently the only Ohio authority on the topic, the court stated that a

> disinterested majority of the shareholders of a corporation have the power to ratify directors' frauds *provided there is no actual fraud in either inducing or effecting such ratification.*

*Id.* at 72, 128 N.E.2d at 436 (emphasis added). While no shareholder ratification has been made in the present case, the § 14(a) allegations parallel the *Claman* proviso that any such ratification cannot itself be induced by the director's fraud. Hence, the *Claman* rule concerning shareholder ratification does not apply to plaintiffs' action herein.[8]

Accordingly, plaintiffs have satisfied the Rule 23.1 requirements with respect to their derivative claims in Counts III and IV.

## III. CONCLUSION

In summary, for the aforementioned reasons, defendants' motion to dismiss plaintiffs' for failure to state a claim upon which relief can be granted is hereby granted in

---

8. Two further reasons counsel against following Defendant's interpretation of *Claman.* First, in 1970 Ohio enacted Civil Rule 23.1, modeled after the federal rule. The previous Ohio rule concerning derivative suits, O.R.C. § 2307.311, was similar to Rule 23.1 but made no mention of a demand upon shareholders. *Claman*, decided in 1955, did not even cite the earlier provision, apparently relying on the common law. Passage of the state rule in 1970, modeled after the federal rule, suggests that *Claman* is of suspect authority in interpreting Ohio R. 23.1. *See* 12 O.Jur.3d, *Business Relationships*, §§ 754–755 (1979). No reported Ohio cases have interpreted Ohio R. 23.1. Indeed, Ohio courts look toward *federal* law when interpreting Ohio rules of civil procedure which are modeled on their federal counter-

parts. *Abbyshire Construction Co. v. Ohio Civil Rights Commission*, 39 Ohio App.2d 125, 316 N.E.2d 893 (Cuyahoga County 1974).

Second, the *Claman* rule permitting shareholder ratification of directors' frauds, while not unique, *see* Comment, *supra*, at 183–84, squarely conflicts with federal decisions holding that shareholders cannot ratify alleged violations of federal law. *See, e.g., Phillips v. Bradford*, 62 F.R.D. 681, 688 (S.D.N.Y.1974); *Dopp v. American Electronic Laboratories, Inc.*, 55 F.R.D. 151, 155 (S.D.N.Y.1972). *Cf. Burks v. Lasker*, 441 U.S. 471, 479–80, 99 S.Ct. 1831, 1837–38, 60 L.Ed.2d 404 (1979) (when applying state law in a federal securities case, said law cannot threaten federal policy or be inconsistent with federal law).

part and denied in part. The motion is granted to the extent that plaintiff seeks to hold the defendants liable for violations of § 13(d) of the 1934 Act. The motion is denied in all other respects.