Robert L. HAMILTON, Jr.,
Plaintiff-Appellant,

v.

Richard L. HARRINGTON, Robert L. Hamilton, Sr., Dumore Corporation and Akamai Investment, Inc., Defendants-Appellees.

No. 86–1717.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1986.

Decided Dec. 3, 1986.

Rehearing and Rehearing En Banc
Denied Dec. 30, 1986.

William H. Alverson, Godfrey & Kahn, S.C., Milwaukee, Wis., for plaintiff-appellant.

Francis R. Croak, Cook & Franke, S.C., Milwaukee, Wis., for defendants-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*

FLAUM, Circuit Judge.

Appellant, Robert L. Hamilton, Jr., appeals from the district court's order granting the defendants' motion for summary judgment. On appeal Hamilton, Jr. alleges over a dozen errors in the district court's

* The Honorable Hubert L. Will, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

order. For the reasons set forth herein, we affirm the judgment below.

## I.

This case involves a family dispute between Hamilton, Jr., and his father Robert L. Hamilton, Sr. In essence, Hamilton, Jr. is trying to create a cause of action that would force his father to sell him the family business.

The Dumore Corporation ("Dumore") is a family business. Hamilton, Sr.'s father was one of the co-founders. Hamilton, Sr. joined the company in 1941, and Hamilton, Jr. joined in 1963 upon his graduation from college. Hamilton, Jr. became president and chief executive officer upon Hamilton, Sr.'s retirement in 1977.

In October, 1982, the time when the events relevant to this litigation began to occur, Hamilton, Jr. owned 1,594 shares of common stock, or approximately 47.2 percent of Dumore. At that time, Hamilton, Sr. was beneficial owner of 42 percent of the common stock, and Hamilton Jr.'s three siblings owned 10.8 percent of the common stock. The preferred stock was divided differently: Hamilton, Jr.'s wife held 4.8 percent; Hamilton, Sr. together with his wife, held 57.3 percent; and Hamilton Jr.'s siblings controlled 37.9 percent.

On October 12, 1982, at a meeting of Dumore's board of directors, Hamilton, Sr. proposed the sale of the business to Dumore director (and defendant in this suit) Richard L. Harrington. Hamilton, Jr. requested that the board defer action on the proposed sale until November. In the interim, Hamilton Jr. sought the necessary financing to make a bid for control of Dumore. Meanwhile, on October 25, 1982, Harrington formed a new corporation whose purpose was to acquire the business assets of Dumore.

Hamilton, Jr. was successful in obtaining financing and was prepared to offer to purchase Dumore at the special board meeting scheduled to be held November 3, 1982. Unfortunately for Hamilton, Jr., the November 3, 1982 meeting did not go the way he had planned. At that meeting, Hamilton, Sr. announced that the company was no longer for sale, and that no offers to purchase would be considered. Moreover, after Hamilton, Jr. refused to resign, Dumore terminated him. The district court found that the board's action in terminating Hamilton, Jr. "came at the request of Hamilton, Sr. who suggested that his son's difficulties with management, personnel, extensive expenditures for consultants, cavalier treatment of him, and attempted use of corporate funds to purchase a Door County (Wisconsin) condominium supported the termination." *Hamilton v. Harrington*, No. 84–C–44 at 5 (E.D.Wis. April 2, 1986) (order granting defendant's motion for summary judgment).

At the November 3 meeting, Hamilton, Sr. told his son that the company was still willing to grant him termination benefits. Plaintiff, under the guidance of counsel, entered into negotiations with Dumore's legal counsel concerning the termination benefits. The negotiations concerned, in part, Hamilton, Jr.'s desire to have the company purchase his shares. On November 17, 1982, Dumore's attorney, Benn S. DiPasquale, sent a letter to Hamilton, Jr., that formed the basis for the final settlement. The final agreement provided that: the company would transfer to Hamilton, Jr. the 1980 Cadillac Seville that he had been using; Dumore would forgive about $12,000 of personal expenses that Hamilton, Jr. had charged to the company; and the company would pay to Hamilton, Jr. $92,000, minus the amount that he owed to the company, as severance pay. The settlement agreement also included a general release by Hamilton, Jr. of all claims against Dumore, its officers, agents, directors, and employees. It is the release provision that is in issue here.

After continued negotiations and alterations in the language and form of the agreement by plaintiff, the termination agreement was signed on January 14, 1983. Under the agreement, the plaintiff transferred his shares of common stock to Dumore for $844,820 ($530 per share). Hamilton, Jr.'s wife sold the preferred shares she

held as trustee for the children to Dumore in exchange for $52,900.

While Hamilton, Jr.'s termination benefits were being negotiated, Hamilton, Sr. contacted Harrington to inquire whether the latter was still interested in purchasing Dumore. Harrington apparently was interested, and began to arrange the necessary financing. Seven days after Hamilton, Jr.'s stock was redeemed, on January 21, 1983, the assets and business were sold to Harrington's company, Akamai Investment, Inc. The transaction gave Hamilton, Sr. the equivalent of $425 per share and left him with the right to a tax refund in the future of an estimated $250,000. Thus, counting the possible future tax benefit, Hamilton, Sr. received about $564 per share.[1]

The district court found that by January 1, 1984, Dumore had fully performed the settlement agreement with Hamilton, Jr. After accepting the benefits under the settlement agreement, Hamilton, Jr. filed suit on January 11, 1984, claiming he was wronged.

## II.

This suit was brought on January 11, 1984, alleging, *inter alia*, a violation of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), a violation of the Wisconsin securities laws, wrongful discharge, and interference with

his prospective economic advantage. The defendants argued in response that all of the plaintiff's claims were barred by the release that Hamilton, Jr. signed.[2] The case was set for a trial to be held on April 15, 1986. On November 12, 1985, however, the defendants moved for summary judgment. Hamilton, Jr. responded with a motion for partial summary judgment. On April 2, 1986, Judge Evans issued his order and decision denying Hamilton, Jr.'s motion and granting the defendants' motion for summary judgment. This appeal followed.

We address plaintiff's contention that since the defendants violated the securities laws the release violated § 29(a) of the Securities and Exchange Act, 15 U.S.C. § 78cc(a). We also consider plaintiff's claim that the release was procured by fraud and duress. We conclude, however, that we need not decide the § 29(a) issue, because there is no Rule 10b–5 violation. We also conclude that the release was not a product of fraud or duress. We therefore affirm the district court's decision.

## III.

### A.

This appeal is from an order granting summary judgment. Summary judgment is properly granted only when there exists no genuine issue as to any material fact

1. We noted at oral argument that a dispute existed as to whether or not the termination benefits should be included in the per share amount. As stated previously Hamilton, Jr. received $530 per share. If the termination benefits were included, this would increase the amount Hamilton, Jr. received to $599 per share, which is $35.00 *more* per share than Hamilton, Sr. received, assuming the tax refund is included in the latter's repurchase price. Hamilton, Jr., under these computations, therefore, would actually receive more than his father did. Thus, it is difficult to see how plaintiff has been injured.

2. The release is contained in the settlement agreement signed by Hamilton, Sr., his wife as trustee for the various family trusts, and Hamilton, Jr. The release states:

IV. FULL AND FINAL RELEASE

Effective as of the Closing, Hamilton and Trustee hereby release, remise and forever discharge Dumore, all past, present and fu-

ture agents, officers, directors, employees and shareholders of Dumore, the Voting Trustees of the Dumore Company Voting Trust, and their respective heirs, executors, personal representatives and other legal representatives of any kind, and each and all of their successors and assigns of and from any and all claims, demands, rights, liabilities and causes of action of whatsoever kind or nature that Hamilton and/or Trustee have ever had may now have or may thereafter have, whether now known or unknown, foreseen or unforeseen, arising from or by reason of or in any way related to (i) any matter, cause, act, omission or thing occurring prior to the Closing, and/or (ii) the ownership of Dumore stock by Trustee and/or Hamilton and any past, present or future opportunity to sell, or sale, by Dumore and/or the shareholders of Dumore of the stock of Dumore or all or substantially all of the assets of Dumore.

and the moving party is entitled to judgment as a matter of law. *Falconer v. Meehan*, 804 F.2d 72, 74–75 (7th Cir.1986). At oral argument in this case, counsel for the plaintiff admitted that the essential material facts were not in dispute. Therefore, the only question before us is whether or not the district court's legal analysis of the issues is erroneous.

### B.

Hamilton, Jr. alleges that the defendants concealed the fact that the company was to be sold. He asserts that had he known this, he would not have sold his shares. According to Hamilton, Jr., this concealment was a misrepresentation actionable under 10b–5, and therefore, the document that he signed releasing his claims was void under § 29(a) of the Securities Exchange Act[3] (the "Exchange Act" or the "1934 Act"). We find that because no misrepresentation exists in this case, we need not decide whether or not the release is void under § 29(a).

Section 29(a) "mandates that a purported release of claims under the federal securities laws is valid *only* as to mature, ripened claims of which the releasing party had knowledge before signing the release." *Goodman v. Epstein*, 582 F.2d 388, 402 (7th Cir.1978) (emphasis in original) (footnote omitted); *Leff v. CIP Corp.*, 540 F.Supp. 857 (S.D.Ohio 1982). *See Korn v. Franchard Corp.*, 388 F.Supp. 1326 (S.D.N.Y.1975); *Mittendorf v. J.R. Williston & Beane, Inc.*, 372 F.Supp. 821 (S.D.N.Y. 1975); *Zapach v. Elkins, Morris, Stroud & Co.*, 375 F.Supp. 669 (M.D.Pa.1973). Hamilton, Jr. argues that there were future, unripened claims in this case. Therefore, the release, according to the plaintiff, is

void and he should be permitted to pursue this suit.

■ We need not, however, decide whether or not the release in question is voided by § 29(a), because the validity of the release is irrelevant to the outcome here. To have a Rule 10b–5 claim there must be either: a scheme to defraud, or the making of any untrue statement of material fact, or the omission of a material fact, or the engaging in an act or practice which operates as a deceit or a fraud upon anyone, that is in connection with the sale or purchase of any security. *See* Rule 10b–5. The district court rejected plaintiff's allegations that the defendants intentionally concealed their plan to sell the company. We agree that, based on the undisputed facts, no material facts were concealed from Hamilton, Jr., nor was there a scheme to defraud him. We hold, therefore, that Hamilton, Jr.'s 10b–5 claim fails, because no intentional misrepresentation or deception exists in this case.

During the course of the negotiations of the settlement agreement, plaintiff became all too aware that his father did not want to sell the company to him.[4] Hamilton, Sr. retired in 1976, and only resumed control of Dumore in 1982, when he became concerned that his son was mismanaging the company. Aware of his father's desire to retire six years earlier, Hamilton, Jr. surely must also have known his father did not want to reassume the day-to-day management of Dumore. Hamilton, Jr. was also aware that Hamilton, Sr. was adamant that Dumore would not be sold to Hamilton, Jr. Hamilton, Jr., therefore, must have realized that his father would ultimately have to sell to someone else.

> We are *not* nor will we ever be interested in selling our stock to you. This has been stated repeatedly by letter and confirmed by the way you ran the company under your management, where you constantly overspent corporate funds. (emphasis in original)

This letter, incidentally, does *not* state that Hamilton, Sr. would not sell to anybody; but rather only that he would not sell to Hamilton, Jr.

---

**3.** Securities Exchange Act of 1934, § 29(a), 15 U.S.C. § 78cc(a). Section 29(a) provides:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

**4.** Hamilton, Sr. wrote to Hamilton, Jr. on December 7, 1982 and stated:

Hamilton, Sr.'s action in withdrawing Dumore from sale at the November 3 meeting is not inconsistent with his desire not to sell to his son. Plaintiff does not allege that his father represented at that meeting that the company would never be for sale. Rather, Hamilton, Sr. withdrew the company for sale only at that time—presumably because Hamilton, Jr. was bidding on it. Under these factual circumstances plaintiff cannot reasonably plead that Hamilton, Sr. and Harrington concealed the sale of Dumore from the plaintiff.[5]

Because we find there was no violation of the securities laws, it is immaterial to our determination whether or not the release in this case was void under § 29(a).

### C.

The plaintiff also argues that the release is void under state law. We conclude, as did the district court, that the release was not a product of fraud or duress. The record unmistakably shows that the plaintiff was represented by an attorney throughout the negotiation process. This, along with the other facts in this case, shows that plaintiff was not fraudulently induced to sign the release. Moreover, although losing his job created an economic hardship, plaintiff has also failed to prove economic duress. *See, e.g., Pope v. Ziegler,* 127 Wis.2d 56, 377 N.W.2d 201, 203 (1985) (a party must prove by clear and convincing evidence that there was a wrongful or unlawful action or threat that

deprived him of his unfettered will.). Thus, we find the release to be a valid bar under state law to plaintiff's remaining claims.

### IV.

Hamilton, Jr. cannot assert that a misrepresentation for purposes of Rule 10b-5 occurred here. The defendants concealed nothing. Because none of the securities laws were violated in this case, we need not address the effect of § 29(a) of the Exchange Act on the release.[6] We also find that the release was not a product of fraud or duress. The judgment of the district court is AFFIRMED.

---

5. Although the facts unmistakably show that there is no misrepresentation in this case, we also note that Hamilton, Jr. could not prove that he relied upon any acts or statements by the defendants. In *Michaels v. Michaels,* 767 F.2d 1185 (7th Cir.1985), we were faced with a situation where the failure to disclose the impending sale of a family firm gave rise to a violation of 10b-5. This case is readily distinguishable from *Michaels,* because Hamilton, Jr. had sufficient notice to make him aware that Hamilton, Sr. was likely to sell to someone else.

In *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522 (7th Cir.1985), we once again were faced with the reliance requirement. We stated that someone who was aware of a high probability of a fact may not rely on silence about that fact. *Id.* at 530. In this case, the facts conclusively show: that Hamilton, Jr.

was aware of the high probability that Hamilton Sr. would sell the business; that Hamilton, Jr. did not inquire as to whether the business would be sold; and that Hamilton, Sr. did not actually represent that he would never sell the family business. We believe, therefore, that Hamilton, Jr. could not rely on Hamilton, Sr.'s silence as a failure to reveal the material fact that Hamilton, Sr. might sell the firm.

6. The district court's alternative holding was that even if the release was void, Hamilton, Jr. had, nevertheless, ratified the release. We need not decide, however, whether equitable defenses should be allowed to be raised by a defendant to a § 29(a) action.